R. M. Blackman *et al.*

*v.*

Preston Bros. *et al.*

*Filed at Mt. Vernon January 20, 1888.*

1. FRAUDULENT CONVEYANCE—*voluntary settlement on wife or child.* While a man has the undoubted right to settle real estate upon his wife and children when existing creditors are not affected thereby, yet he will not be allowed, under the guise of settling property upon his family, to perpetrate a fraud upon others. He may not be allowed to retain the actual possession of real estate, and have the records disclose title in himself, and by claiming title in himself obtain credit, and afterward say that he had conveyed the property to his wife and children, and that it shall not therefore be liable for his debts.

2. In this case, the owner of lands made conveyances of a farm of two hundred acres to his two minor sons, one aged about eleven or twelve years and the other about six, and shortly afterward made and acknowledged another deed to his wife for his remaining land. There was no proof of the delivery of the latter deed, and the deeds to the sons, after being handed to them, were placed in the father's desk, and afterward remained in his custody. It would appear, from his evidence, that these deeds were made to take effect in case of his death, only. No change of possession was ever made, the grantor receiving all the rents and use of the land and paying all the taxes thereon. He engaged in the mercantile business, and became involved in debt, and represented to those giving him credit that the lands were his, the deeds not having been placed on record. He obtained credit on the faith of his apparent and avowed ownership, and the fact of his possession, and the fact that the record showed title in him. Finding himself insolvent, some six years after the date of his deeds he placed them on record: *Held,* in the absence of anything charging his creditors with notice of these conveyances, that they had a right to rely on his possession and representations of ownership, and that the conveyances were fraudulent and void as to such creditors.

3. EVIDENCE—*declarations of grantor as against grantee.* While innocent grantees in a deed are not concluded by the acts and declarations of their grantor, those who fail to place their deed upon record, and who permit their grantor to remain in possession and exercise the acts of an owner, are not innocent grantees as to those whom the grantor has induced to give him credit on the faith of his assumed and apparent ownership of the property.

4. DEED—*necessity of delivery—of a testamentary disposition.* A deed to be valid as a conveyance of real estate, must be delivered. A testamentary disposition of property is ambulatory until the death of the testator, when it takes effect; but a deed of an interest in land must take effect upon its execution, or not at all.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Saline county; the Hon. DAVID J. BAKER, Judge, presiding.

This was a creditors' bill, originally filed by Preston Bros. in the Saline circuit court, at the September term, 1884, against the plaintiffs in error. The other defendants in error, upon their petitions, were made complainants.

The bill sought to cancel certain deeds made by C. S. Blackman to his wife and two minor sons, and to have the lands therein described subjected to sale on executions issued upon judgments in favor of defendants in error, and against C. S. Blackman. On the hearing, the court granted the relief sought, and the Blackmans took the case to the Appellate Court, where the decree below was affirmed, and they now seek to have the judgment of that court reversed. The facts appear in the opinion.

Messrs. GREEN & GILBERT, for the plaintiffs in error:

We concede that a voluntary conveyance, when the grantor is indebted at the time of its execution, is presumptive evidence of fraud; that a fraudulent intent will be presumed from the fact he was indebted at the time, and also that as to pre-existing creditors, every conveyance not made for a consideration, valuable in law, is voidable. *Moritz v. Hoffman,* 35 Ill. 553.

A debtor may execute a valid voluntary conveyance, if he continue to hold property sufficient to discharge all his debts which are in existence at the date of execution of the alleged fraudulent conveyance. The case must be such that the in-

solvency was the fruit of the voluntary conveyance. *Moritz* v. *Hoffman,* 35 Ill. 556.

An advancement to a child, or a gift to a wife, made by a father or a husband while in debt, is valid, provided the debtor fairly retains in his hands property sufficient to pay all debts existing at the date of the advancement or gift. *Van Wick* v. *Seward,* Paige Ch. 62.

In *Hinde's Lessee* v. *Longwarth,* 11 Wheat. 210, the court say: "It was certainly competent for the defendant to show that the grantor was indebted at the time he made the conveyance. This was a necessary step toward establishing the fraud. * * * A deed from a parent to a child, for the consideration of love and affection, is not absolutely void as against creditors."

But it is the doctrine of the court that only creditors having claims when fraud is committed, can avoid such conveyances, unless it is shown that the deed was made in anticipation of incurring debts, to avoid payment of which the conveyance was made. *Tunison* v. *Chamblin,* 88 Ill. 285.

It is not sound reasoning to contend that the omission to file the deed for record till August 6, 1881, is evidence of fraud. Defendants in error gave credit to C. S. Blackman after August 6, 1881, just as they had done before that date. At different times subsequent to that date, they accounted with him, and expressed their satisfaction with the security he gave them.

If the conveyances to the sons were made in good faith, as fair advancements, with no fraudulent intent at the time, any subsequent scheme of rascality by C. S. Blackman could not affect the validity of the conveyances, unless the grantees were parties to the scheme. *Ewing* v. *Runkle,* 20 Ill. 448; *Rust* v. *Mansfield,* 25 id. 336; *Wilson* v. *Pearson,* 20 id. 81; *Bowen* v. *Parkhurst,* 24 id. 261; *Meyers* v. *Kinzie,* 26 id. 36; *Cadogan* v. *Kennett,* Cowper, 434; *United States* v. *Hoge,* 3 Cranch, 88; *McIntire* v. *Benson,* 20 Ill. 500.

The land was given to the sons for their own use. There could be no implied trust. It is not true that there can be a secret trust in property given to another for his own use. *Bragg* v. *Geddes*, 93 Ill. 58; *Remington* v. *Campbell*, 50 id. 516; *Sheldon* v. *Harding*, 44 id. 68; *Holmes* v. *Holmes*, 44 id. 268; *Stephenson* v. *Thompson*, 13 id. 186.

Messrs. Parish & Parish, Messrs. Boyer & Choisser, and Messrs. Marsh & Scott, for the defendants in error:

A party out of debt can make a settlement of his property, or any part of it, on whom he pleases, if done in good faith; and any one dealing with him after such settlement is made a matter of record, will have no right to assail it, or say it was fraudulent as to him. *Durand* v. *Weightman*, 108 Ill. 489.

If the disposition of his property does not deprive others of an existing claim to it, no one can complain, if the transfer be made a matter of public record, and be not designed as a sham, to defraud future creditors. *Jones* v. *Clifton*, 11 Otto, 225.

A deed not fraudulent at first may afterward become so, by being concealed or not pursued, by means of which creditors have been drawn in to lend their credit. *Hungerford* v. *Earl*, 2 Vern. 261; *Hildreth* v. *Sands*, 2 Johns. Ch. 46; *Bank* v. *Housman*, 6 Paige, 526; *Coates* v. *Gerloch*, 44 Pa. 43; *Hilliard* v. *Cagle*, 46 Miss. 309; *Scrivener* v. *Scrivener*, 7 B. Mon. 374; *Blennerhasset* v. *Sherman*, 15 Otto, 100; Bump on Fraud. Con. 325, 326, 39, 40; Waite on Fraud. Con. 324.

The retention of possession, receiving the rents and profits by the grantor after the execution of a deed therefor, absolute upon its face, manifests a secret trust in favor of the grantor, and renders the conveyance void not only against precedent, but subsequent creditors, without notice. *Jones* v. *King*, 86 Ill. 225; *Hildreth* v. *Sands*, 2 Johns. Ch. 46; *Moore* v. *Wood*, 100 Ill. 451; *Power* v. *Alston*, 93 id. 587; *Anderson* v. *Armstead*, 69 id. 454.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The general principles applicable to the questions presented by this record are familiar. They have been quite often discussed and applied by this court in kindred cases. The right of a party to settle real estate upon his wife and children, when existing creditors are not affected thereby, is undoubted; but no one is allowed, under the guise of settling property upon his wife and children, to perpetrate a fraud upon others. He may not be allowed to retain the actual possession of real estate, and have the records disclose title in himself, and, by then claiming title in himself, obtain credit, and afterwards say that he had conveyed it to his wife and children, and that it shall not, therefore, be subject to the payment of the debt. While the innocent grantees in a deed are not concluded by the acts and declarations of their grantor, those who fail to place their deed upon record, and who also permit their grantor to remain in possession, are not innocent grantees as to those whom he has induced to give him credit upon the faith of his claimed ownership of the property. *Bank of the United States* v. *Housman et al.* 6 Paige Ch. 526; *Jones et al.* v. *King et al.* 86 Ill. 225; *Moore, Admr.* v. *Wood,* 100 id. 451; *Power* v. *Alston,* 93 id. 587; *Hildreth* v. *Sands,* 2 Johns. Ch. 35; 2 Pomeroy's Eq. sec. 973. Moreover, a deed, to be valid as a conveyance of real estate, must be delivered. A testamentary disposition of property is ambulatory until the death of the testator, when it takes effect, but a deed of an interest in land must take effect upon its execution, or not at all. *Cline et al.* v. *Jones et al.* 111 Ill. 563.

The facts, here, are briefly these: Calvin S. Blackman was the owner of a farm of two hundred acres, lying within a short distance of Stone Fort, in Saline county. He also owned a separate tract of twenty acres, near by. His title to all of these lands was of record. He was a married man, having a family, consisting of his wife, R. M. Blackman, and four sons

and several daughters. He and his family resided upon the two hundred acre tract, making it their homestead. On the 17th of March, 1875, he signed and acknowledged deeds purporting to convey eighty acres of the two hundred acre tract to his son Samuel, then eleven or twelve years of age, and the remaining one hundred and twenty acres of that tract to his son John, then about six years of age; and all the material evidence with regard to the delivery of those deeds and the purpose of their execution is as follows: Blackman, on his direct examination, testified: "Well, right after the time (*i. e.,* the signing and acknowledging of the deeds,) I called the boys to me. I had a spell of rheumatism, and couldn't get around, and gave the deeds to them. * * * I had been in ill health for some years, and had just got over a pretty severe attack of the rheumatic pain, and after I got better I concluded that was as good a time to close the deeds while I was able to get around, and while I was living with the expectation of going out west to improve my health, not knowing but what I might get worse while I was out, and not be able to get back; and if so, I wanted the boys to have the home place,—the two youngest." He had previously testified that he had advanced his older children, and that he was not in debt at this time. On cross-examination, he testified: "I just told them, (*i. e.,* Samuel J. and John,) here was the deeds I had made them to the home farm. I had made a deed, to where the house was, to Johnny, and told Sammy his was down on the east side, where the well was. He had taken that. I told them I wanted them to have the home farm, if I dropped off or anything happened, and Sam he just said to keep the deed for him, and I do not recollect what John said. I had them and put them in a desk, or they did, or some one. I rather believe Sam put them in the desk, but I am not positive." The desk belonged to the witness, and was used for retaining papers of himself and family, and to write upon, and he added that the deeds have been there ever since. The family continued to

live upon the land after this as before. In the fall of 1876 the witness went to Texas, and he spent the winter of 1876-1877 there, returning in the spring of 1877, but the balance of the family remained on the farm. In November, 1877, the witness engaged in the mercantile business at Stone Fort, and he continued therein until, perhaps, in August, 1881. During the year 1878, witness and his family lived at Stone Fort, but at the end of that time they returned to the farm, and, with that exception, he and his family lived continuously upon the farm from the time that he returned from Texas until after this suit was commenced. While they lived at Stone Fort he rented the farm, in his own name, and the lands have been assessed in his name, and he has paid all taxes thereon since he signed and acknowledged the deeds, just as he did before. It is clear, beyond question, that he, at no time, has acted towards the public as if the lands belonged to his sons. His stock and other property have remained on the farm, and the family have lived upon the proceeds of the farm, and Samuel J. and John have had no rents and profits, or benefits in any way, from it, other or different than those enjoyed by the other children.

Although there is conflict in the evidence, the clear preponderance is, that in 1879 some of these complainants becoming uneasy about the extent of liabilities Blackman was incurring to them, sent agents to him to make special inquiries in regard to his financial standing, and he then represented to these agents that he owned these lands; and the proof is satisfactory, that upon the faith of his actual possession and apparent ownership of all these lands, and without either actual or constructive notice to the contrary, all these debts were incurred. In August, 1881, it became apparent that Blackman was insolvent, and then, on the sixth day of that month, after all these debts were incurred,—but a few days before notes therefor were executed,—he placed these deeds upon the record for the first time. The reasonable conclusion is, that it was not

intended, when these deeds were signed and acknowledged, that they should take effect until after the death of Blackman; that they were in the nature of testamentary devises, and therefore inoperative as deeds. On the 29th of October, 1875, Blackman made and acknowledged a deed of the twenty-acre tract of land to his wife, R. M. Blackman. He seems to have not then had title himself, but the tract was conveyed to him on the 4th of March, 1876, and on the 11th of November, 1876, he placed this deed on record. But there is not satisfactory proof that he ever delivered the deed that he made to his wife. She is not shown to have ever had any independent control of it. It was not placed on record until the 6th of August, 1881, and then it was done by Blackman at the same time that he placed on record the deeds to the boys. She never received any rent of this tract, nor exercised any control over it. It was assessed in his name, and he paid the taxes thereon. He rented it in his own name, and acted as if owner, and represented to the agents of complainants that he was owner.

There is, it is true, evidence that neighbors heard Blackman, long before August, 1881, and at various times, speak of having made deeds of these lands to his wife and two sons; but this is unimportant, since the preponderance of evidence fails to show that knowledge of these deeds was brought home to the complainants. They, under the circumstances in evidence, had a right to rely on his possession and representations, in view that the records disclosed no title inconsistent therewith.

The decree below must be affirmed.

*Decree affirmed.*