AMERICA MILLER *et al.*

*v.*

ROBERT MEERS *et al.* Exrs. and Trustees.

*Filed at Ottawa April 1, 1895.*

1. WITNESSES—*life tenant whose lease is attacked by executors of lessor is incompetent.* A lessee for life, who is co-defendant in a suit by his children against the executors and trustees of his deceased brother to compel delivery of a deed of the remainder in the land, is incompetent to testify, where a cross-bill by such executors and trustees seeks to have both the lease and the deed delivered up and canceled, and both issues are tried together.

2. EVIDENCE—*declarations by testator affecting delivery of deed.* In an action against executors and trustees to compel delivery of a deed made by their testator, declarations of the latter, made long afterwards, while preparing a list of property for his will, that the provisions made therein for plaintiffs were all he had made or intended to make, being statements in his own favor, are inadmissible either to show want of intention to deliver the deed, or to disprove statements shown to have been made by the testator that the property belonged to the plaintiffs.

3. SAME—*presumptions in favor of delivery of deed of settlement.* The law makes stronger presumptions in favor of the delivery of deeds in cases of voluntary settlement—especially in favor of infants—than in ordinary cases of bargain and sale.

4. DEEDS—*of voluntary settlement—what acts will show delivery.* A voluntary deed by a grantor to his nephews and nieces, handed, upon its execution and acknowledgment, to the former's partner or employee and placed by the latter in the safe, no control being exercised by the grantor over it for fifteen years, will be held to have been delivered, in the absence of anything to show a contrary intention, especially where the grantor, at the same time, makes a life lease of the property, to which the deed is made subject, and which expressly recognized the grantees as owners.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

Plaintiffs in error, the seven children of William P. Bissell, filed their bill in equity in the circuit court of Will county, against defendants in error, as executors and trustees under the last will of Martin C. Bissell, deceased, and against William Grinton and others, to

compel the delivery to complainants of a deed executed to them by said Martin, in his lifetime, for certain real estate situated in Joliet, called the "Bissell Hotel property," and to confirm and establish the title to said property in said plaintiffs. William P. Bissell also was made defendant to the bill. The executors filed a cross-bill to compel the cancellation and delivery to them of said deed, and also of a life lease executed at the same time by said Martin to said William P. Bissell and wife. Issues were made on the bill and cross-bill, and on a hearing the circuit court decreed that the bill be dismissed, and that the relief prayed by the cross-bill be granted, and that the complainants pay the costs. This writ of error is brought by the complainants to reverse that decree.

The principal facts set up in the pleadings and established by the proofs are, in substance, as follows: Martin C. Bissell, the owner of the property in question, resided in Joliet, and was a man of considerable wealth. His wife was living, but they had no children. He had permitted his brother, William P. Bissell, the father of plaintiffs in error, who was possessed of small means, to occupy and run the hotel property for a number of years, upon terms disclosed only by the testimony of the said William, held by the court to be incompetent. The evidence does not, however, disclose that William had ever paid, or agreed to pay, any rent. In 1875, while William, with his wife and three minor children, was thus occupying the property, his adult children having established themselves in other parts of the country, Martin and his wife executed and acknowledged a warranty deed of the hotel property to plaintiffs in error, naming them, and as the children of said William, for the expressed consideration of one dollar and natural love and affection, and at the same time Martin executed and delivered to William and his wife a life lease to the same property. The deed recited that it was subject to the lease. The deed

was drawn by the defendant William Grinton, at Martin's request. Grinton also attested its execution as a witness, and as a notary public took the grantors' acknowledgment. The certificate was in the usual form, certifying that the grantors "acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein expressed." The lease was executed by Martin as lessor and William and his wife as lessees; was delivered to William and his wife; purported to be for the term of their "natural lives," and upon the consideration that the lessees should pay all taxes, keep the premises in as good condition as when received, keep the buildings insured, three-fourths of the insurance for the benefit of the lessees and one-fourth for their children, the plaintiffs in error. The lease also contained the following:

"And it is further expressly agreed by and between the parties hereto, that in case said premises should at any time be sold for taxes or assessments, and said party of the second part should fail to redeem said premises from such sale at least three months before the time for redemption from said sale expires, or if said parties of the second part shall both, at any time, cease to personally occupy said premises, (loss or damage by fire or inevitable accident excepted,) then and in either of said last named events the said children of the said William P. Bissell above named shall have the right, at their election, to declare said term ended, anything herein to the contrary notwithstanding, and the said demised premises, or any part thereof, to enter, and the said party of the second part, or any other person or persons occupying in or upon the same, to expel, remove or put out, using such force as may be necessary in so doing."

The deed and lease were dated January 11, 1875, but the acknowledgment was taken March 31, 1875. Some time in 1877, because of some domestic trouble, William's wife left him and went to a distant city to live with her

sister, taking some of their younger children with her, and about six months thereafter William left the premises also and removed to Chicago, he and his wife having permanently separated, and neither of them, nor their children, have since then occupied the property.

When Martin C. Bissell and wife executed the deed to plaintiffs in error, Martin left it with Grinton, the notary, and told him to take it and take care of it, giving no other directions respecting it. Grinton put it in an envelope and placed it in the safe in the office where he and Martin were engaged in business. He was then transacting business for Martin C. Bissell and himself under a contract, by which he received a certain share of the profits. The private papers of each, as well as their partnership papers, were kept in the safe. Grinton retained possession of the deed until he produced it in court after the death of Martin C. Bissell—a period of about fifteen years. He testified that it had never been out of his hands since it was placed there by Bissell, the grantor, and it does not appear that any one ever asked him for the deed until it was demanded by plaintiffs in error, shortly before the filing of this bill.

After William P. Bissell left the property, in 1877, Martin C. Bissell took charge of it, collected the rents, paid the taxes on it and kept it in repair—the collections exceeding the disbursements by only a small amount. Plaintiffs in error claim this was done by agreement between him and his brother, William, while defendants insist it was done as the owner, in the exercise of his ownership of the property. Two witnesses, Stevens and Dishman, testified that during this period Martin told them, at different times, that the property belonged to his brother's children. One of these witnesses, an old neighbor of Martin's, and who had formerly owned the property, seeing that it "was running down," inquired of him about the property and proposed to purchase it, but Martin told him he could not sell it; that it was not his;

that he had deeded it to his brother's children and had given his brother a life lease on it; that his brother had full control of it before he went to Chicago, but had allowed it to run to waste, and that he had paid the taxes for the benefit of his brother. One of these conversations, the witness testified, occurred seven or eight years before the trial, which took place in 1890, and the other, five or six months before Martin's death. In the last conversation this witness, Stevens, asked Martin why William did not take care of the property, and the reply was that William and his wife had parted and he did not seem to take much charge of it. The other witness testified, that some four years before the trial he was employed by Martin in whitewashing in the hotel. He was an elder or steward in the African M. E. Church, and was interested in procuring a site for a church, and suggested to Bissell the idea of letting him have the property, so that he "could turn it over for a church," but that Bissell replied that he could not let him have it—that it was his brother's children's property, and he would attend to it.

Two witnesses—Grinton and Vose—testified, for defendants, that after William P. Bissell left the property, Martin C. Bissell turned it over, first to Grinton and then to Vose, who took charge of it, kept the accounts of collections and disbursements, and carried it on the books in Martin's name, and in the same manner as other property of Martin. Vose testified that Martin tried to sell it, and in 1885 talked of trading it for land in Virginia. Vose claimed to have acquired an interest in the property, and had a suit pending against the executors to enforce it. Martin C. Bissell, by his will, after making various small bequests to plaintiffs in error and others, gave the bulk of his estate to defendants in error, in trust for certain religious purposes. The testator's property was not specifically described in the will.

HILL, HAVEN & HILL, for plaintiffs in error :

Anything which clearly manifests the intention of the grantor and the person to whom it is delivered that the deed shall presently become operative and effectual, that the grantor loses all control over it, and that by it the grantee is to become possessed of the estate, constitutes a sufficient delivery, for the essence of the delivery is the intention. *Bryan* v. *Wash,* 2 Gilm. 565 ; *Cline* v. *Jones,* 111 Ill. 567; *Thompson* v. *Candor,* 60 id. 247; *Gunnell* v. *Cockerill,* 79 id. 81; *Douglas* v. *West,* 140 id. 463.

There may be a manual transfer of the instrument, with or without words, or it may be a purely verbal act, as where the grantee is simply directed to go and get a deed already prepared for him. It is the intention that gives validity, force and effect to the act, whatever that may be. *Weber* v. *Christen,* 121 Ill. 91; *Walker* v. *Walker,* 42 id. 314; *Masterson* v. *Cheek,* 23 id. 76.

The law presumes much more in favor of the delivery of deeds in cases of voluntary settlements, especially when made to infants, than it does in ordinary cases of bargain and sale. *Walker* v. *Walker,* 42 Ill. 311; *Douglas* v. *West,* 140 id. 461; *Williams* v. *Williams,* 148 id. 430.

A voluntary settlement, fairly made, is always binding, in equity, upon the grantor, unless there be clear and decisive proof that he never parted with the deed ; and even if he retained it, the weight of authority is decidedly in favor of its validity, unless attended by other circumstances, besides the mere fact of his retaining it, showing that it was not intended to be absolute. *Souverbye* v. *Arden,* 1 Johns. Ch. 256 ; *Clavering* v. *Clavering,* 2 Vern. 473 ; *Broughton* v. *Broughton,* 1 Atk. 625 ; *Bryan* v. *Wash,* 2 Gilm. 569 ; *Cline* v. *Jones,* 111 Ill. 568.

If a party execute a valid instrument, and the deed recite that it is sealed and delivered, it will be binding upon the settlor, although he never parts with it, but keeps it in his possession until his death. Perry on Trusts, sec. 103 ; *Uran* v. *Coates,* 109 Mass. 581.

The fact that a deed is executed in the presence of an attesting witness is sufficient evidence to support a finding that the deed was in fact duly delivered. *Moore* v. *Hazleton,* 9 Allen, 106; *Howe* v. *Howe,* 99 Mass. 98; *Scrugham* v. *Wood,* 15 Wend. 545; *Bunn* v. *Winthrop,* 1 Johns. 329.

Evidence to impeach a certificate of acknowledgment of a competent officer must be so full and satisfactory as to convince the mind that the certificate is false. *Griffin* v. *Griffin,* 125 Ill. 436; *Watson* v. *Watson,* 113 id. 56.

William P. Bissell was not a necessary party, and his testimony was clearly competent, on behalf of plaintiffs in error, in relation to the execution and delivery of this deed. That was a matter in which he had no direct interest. *White* v. *Ross,* 147 Ill. 427; *Bradshaw* v. *Combs,* 102 id. 428; *Smith* v. *West,* 103 id. 332.

Higgins & Akin, for defendants in error:

William P. Bissell was incompetent as a witness in this case. Rev. Stat. chap. 51, sec. 2; *Lowman* v. *Aubery,* 72 Ill. 652; *Marshall* v. *Peck,* 91 id. 190; *Wachter* v. *Blowney,* 104 id. 617; *Redden* v. *Inman,* 6 Ill. App. 57; *Wagenseller* v. *Prettyman,* 12 id. 341; *Richardson* v. *Hadsell,* 106 Ill. 476; *Ferbrache* v. *Ferbrache,* 110 id. 216; *Ebert* v. *Gerding,* 116 id. 221; *Stewart* v. *Fellows,* 128 id. 480; *Hayes* v. *Boylan,* 141 id. 407.

Statements by Benjamin Olin are admissible against what the witnesses Stevens, Dishman and William P. Bissell testified to. *Price* v. *Hudson,* 125 Ill. 287.

Martin C. Bissell could control and execute a conveyance of the property to such person as might be found to trade for it. This not only defeats recovery under the claim of delivery, but also defeats recovery under the claim of voluntary settlement. *Cline* v. *Jones,* 111 Ill. 569; *Blackman* v. *Preston,* 123 id. 385; *Byars* v. *Spencer,* 101 id. 429; *Gorman* v. *Gorman,* 98 id. 362; *Wormley* v. *Wormley,* id. 544; *Stinson* v. *Anderson,* 96 id. 373; *Bovee* v. *Hinde,* 135 id. 137; *Hayes* v. *Boylan,* 141 id. 407.

There was no declaration in writing, and there was no consideration. Equity never lends its aid to enforce or carry out a gift. *Badgley* v. *Votrain*, 68 Ill. 28; *Wadhams* v. *Gay*, 73 id. 431; *Hoig* v. *Adrian College*, 83 id. 267; *Barnum* v. *Reed*, 136 id. 398, and cases cited.

If Stevens and Dishman were competent, we insist their testimony was utterly irrelevant. The law is that a deed must take place,—that is, that it must take effect,—upon its execution, or not at all. *Cline* v. *Jones*, 111 Ill. 569; *Bovee* v. *Hinde*, 135 id. 148; *Hayes* v. *Boylan*, 141 id. 407; *Byars* v. *Spencer*, 101 id. 429; *Blackman* v. *Preston*, 123 id. 385.

Courts never enforce a gift or complete one, or require heirs, executors or others to do anything necessary to the consummation of the gift. *Barnum* v. *Reed*, 136 Ill. 398; *Badgley* v. *Votrain*, 68 id. 28; *Wadhams* v. *Gay*, 73 id. 431; *Hoig* v. *Adrian College*, 83 id. 267.

Although the safe in Bissell's office was used by both William Grinton and Martin C. Bissell, and was under the control of each, the deed in that safe was as much within the possession and control of Martin C. Bissell as if he had retained it about his person. *Bovee* v. *Hinde*, 135 Ill. 137; *Jordan* v. *Davis*, 108 id. 336; *Chadwick* v. *Webber*, 3 Greenl. 141.

Mr. JUSTICE CARTER delivered the opinion of the court:

The controverted question in this case is, did the title to the hotel property, subject to the lease to William P. Bissell, vest in plaintiffs in error by virtue of the deed of Martin C. Bissell and wife, or did the deed fail to take effect because of non-delivery. ·The first question to be determined is, whether or not the trial court erred in the admission of the testimony of the witnesses Olin and William P. Bissell.

Judge Olin, who drew the will of Martin C. Bissell, was permitted, against the objection of the plaintiffs, to testify that the testator, in making up the list of his property to be included in his will, included in the list

the hotel property, and told him (the witness) that the provisions made in the will for plaintiffs were all he had given or intended to give them. The court had also, against the objections of the defendants, permitted the plaintiffs to prove by William P. Bissell that he went into the possession of the hotel more than ten years before the deed and lease were made, under the promise of his brother to give it to him for life with remainder to his children, and that he retained possession under such promise without paying any rent, until the lease was made, and that when he left it, in 1877, he arranged with his brother to lease and take care of the property. In both of these rulings the trial court erred. The defendants were defending as the executors and trustees under the will of the deceased, and William P. Bissell was a party, and interested in the event of the suit adversely to the estate. While it is true the bill did not, in terms, seek to establish the lease, yet it set up the lease as well as the deed, and the deed, on its face, purported to be subject to the lease. As between the grantees in the deed and the lessees, no forfeiture had ever taken place under the lease. If William's testimony was true, instead of abandoning the lease and surrendering the property to the lessor, he only made arrangements with his brother to take care of the property for him, and his brother's subsequent control of the property was not that of owner, but simply as agent for him, as lessee, and for his children as the owners of the fee. The cross-bill sought to have both the lease and the deed delivered up and canceled. Both issues were tried together. The court decreed in favor of the defendants, and thus annulled the lease. Had the decree been in favor of the complainants, the effect would have been to establish the subsisting validity of the lease as well as of the deed, and the estate would have been diminished. He was clearly incompetent, under the statute.

The testimony of the witness Olin as to the statements of Martin C. Bissell, made in his own favor, long after the deed took effect, if it ever took effect, was also improperly received. The deed took effect in 1875, when it was executed, acknowledged and delivered, if it ever was delivered. If the deed became effective in 1875, it could not be rendered inoperative by anything the grantor could say ten years later. If it was a question to be determined from the evidence, as it certainly was, whether the deed did become effective or not in 1875, hearsay evidence, or the declarations of a party in interest in his own favor, made long afterward in the absence of the other party, could not be received to aid in determining such question.

Counsel for defendants, however, strenuously contend that this testimony was proper, as showing that it was not the intention of the grantor that the deed should take effect as a voluntary settlement, and cite the following cases in support of their contention: *Cline* v. *Jones*, 111 Ill. 563, *Bovee* v. *Hinde*, 135 id. 137, *Barnum* v. *Reed*, 136 id. 388, and *Price* v. *Hudson*, 125 id. 284, which last case, it is insisted by counsel, is conclusive of the question. We find nothing in that case changing the rule long established. This court there said: "Any disposition made of the deed by the grantor, with the intention thereby to make delivery of it, so that it shall become presently effective as a conveyance of a title, will, if accepted by the grantee, constitute a sufficient delivery. (3 Washburn on Real Prop. 288-293 ; *Benneson* v. *Aiken*, 102 Ill. 284.) The intention to deliver, on the one hand, and of acceptance on the other, may be shown by direct evidence of the intention, or may be presumed from acts or declarations, or both acts and declarations, of the parties, constituting parts of the *res gestæ*, which manifest such intention; and in like manner the presumption of a delivery may be rebutted and overcome

by proof of a contrary intention, or of acts and declarations from which the contrary presumption arises. It is not competent to control the effect of the deed by parol evidence when it has once taken effect by delivery, but it is always competent to show that the deed, although in the grantee's hands, has never, in fact, been delivered, unless the grantor, or those claiming through him, are estopped in some way from asserting the non-delivery of the deed." Neither the facts in that case nor the language used warrant the inference drawn from the case by defendants' counsel. Nor do the other cases cited lay down any different rule.

As to whether Martin C. Bissell continued to deal with the property, and the grantees permitted him to continue to deal with it, as his own, after the execution of the deed, other witnesses were examined, but it was clearly erroneous to admit and consider the testimony of Judge Olin as to statements made to him by Bissell when drafting his will, to the effect that he still owned the hotel property and had never given it to plaintiffs in error. (*Guild* v. *Hull*, 127 Ill. 523; *Dickie* v. *Carter*, 42 id. 376; *Massey* v. *Huntington*, 118 id. 80; *Long* v. *Long*, 19 Ill. App. 389, and 118 Ill. 638.) These statements had no connection, either in time, place or circumstance, with the statements made to the witnesses Stevens and Dishman, to the effect that the property belonged to his brother's children, and that he was attending to it for them and his brother, and did not tend to disprove such statements, as supposed by counsel. These latter statements were properly received as admissions by the grantor,—as statements against his interest. They tended to show that he considered the deed as having taken effect, and that the title had vested in the grantees. They also tended to explain his acts in dealing with the property after having conveyed it.

But the question still arises, whether or not, after considering all proper evidence and rejecting all held

to be improper, the decree of the trial court can be sustained. "No particular form or ceremony is necessary to constitute a delivery" of a deed. "It may be by acts without words, or by words without acts, or by both. Anything which clearly manifests the intention of the grantor and the person to whom it is delivered, that the deed shall presently become operative and effectual, that the grantor loses all control over it, and that by it the grantee is to become possessed of the estate, constitutes a sufficient delivery. The very essence of the delivery is the intention of the party." *Bryan* v. *Wash,* 2 Gilm. 557; *Cline* v. *Jones,* 111 Ill. 563, and cases there cited.

It is well settled that the law makes stronger presumptions in favor of the delivery of deeds in cases of voluntary settlements, especially in favor of infants, than in ordinary cases of bargain and sale. The acceptance by the infant will be presumed. And it is even held that an instrument may be good as a voluntary settlement though it be retained by the grantor in his possession until his death, provided the attending circumstances do not denote an intention contrary to that appearing upon the face of the deed. (*Bryan* v. *Wash,* supra; *Cline* v. *Jones,* supra; *Reed* v. *Douthit,* 62 Ill. 348; *Walker* v. *Walker,* 42 id. 311; *Otis* v. *Beckwith,* 49 id. 121; *Masterson* v. *Cheek,* 23 id. 72; *Souverbye* v. *Arden,* 1 Johns. Ch. 242; *Bunn* v. *Winthrop,* id. 329; *Scrugham* v. *Wood,* 15 Wend. 545; Perry on Trusts, sec. 103; *Uran* v. *Coates,* 109 Mass. 581; *Thompkins* v. *Wheeler,* 16 Pet. 114.) And it was said in *Weber* v. *Christen,* 121 Ill. 91, that "the crucial test, in all cases, is the intent with which the act or acts relied on as the equivalent or substitute for actual delivery were done."

The deed in question must have taken effect at once upon its acknowledgment and delivery to Grinton, or not at all, and the real question is, with what intention was the deed placed in the hands of Grinton? (*Blackman* v.

*Preston,* 123 Ill. 381; *Hayes* v. *Boylan,* 141 id. 400; *Bovee* v. *Hinde,* 135 id. 137, and cases *supra.*) Nothing was said by the grantor at the time to indicate an intention that the deed should not take effect. His instructions were to take the deed and take care of it—whether for himself or the grantees he did not say. The grantees were his nephews and nieces, seven in number, the adults living in different places, and the minors with their father, his brother, on the premises conveyed. Under the circumstances it may have been a question of some difficulty in his mind to determine to whom the deed should be delivered. Instead of delivering it to either of the grantees he could lawfully deliver it to a third person for their benefit. He did deliver it to a third person, and whether for their benefit or only as custodian for himself is a question of fact, to be determined from the evidence.

Defendants insist that Grinton was the grantor's clerk, and that his possession was the possession of the grantor. It is not clear, from the evidence, what the business relations were between Grinton and Martin C. Bissell. Grinton testified that he was not employed by the day, week, month or year; that he always had a partnership contract with Bissell in the profits, and that that was the case when these papers were executed; that the partnership papers, as witness called them, as well as his individual papers and those of Martin C. Bissell, were all kept in the safe. Whether he was responsible for the losses and expenses of the business is not disclosed by the evidence. From the evidence given he may have been a partner in business with Bissell, or merely an employee receiving a share of the profits as a measure of his pay for his services. In *Lockwood* v. *Doane,* 107 Ill. 235, this court held, that "where parties agree to share in the profits of business the law will infer a partnership between them in the business to which the agreement refers; but this presumption may be disproved. It is

*prima facie* evidence, and will control until rebutted."
(*Niehoff* v. *Dudley*, 40 Ill. 406.)    Under the evidence and
these authorities it would seem that the relation between
Grinton and Martin C. Bissell, at the time of the trans-
action in question, must be treated as that of a part-
nership.    If so, the transaction not pertaining to their
partnership affairs, possession of the deed by Grinton
was not, by virtue of their relation, the possession of
the grantor, but was the possession of a third person.
Grinton took this deed and placed it in an envelope, and
put it in the safe, and kept it in his possession for fifteen
years thereafter, until the trial in the circuit court.  Had
Martin intended to retain control of it he could as well
have placed it with his own papers in the safe.    This he
did not do, nor did he ever assume or assert any control
over the deed afterward.    Grinton was a notary public,
and as such took the acknowledgment.  By this acknowl-
edgment the grantors acknowledged that they signed,
sealed and delivered the instrument as their free and
voluntary act, for the uses and purposes expressed in it.
Whether, on an issue as to the delivery of a deed other-
wise left in doubt by the proofs, such an acknowledg-
ment would be sufficient evidence of a delivery, it is not
necessary in this case to decide, for, as we conceive, the
intention of the grantor is otherwise disclosed by the
evidence with sufficient clearness,—and this, too, whether
Grinton was a partner or a mere employee of Martin C.
Bissell.

We find nothing in the attending circumstances denot-
ing an intention on the part of the grantor that the deed
should not take effect, but, on the contrary, there is suf-
ficient evidence that he intended the deed to become
presently effective.    He at the same time executed and
delivered to his brother, the father of plaintiffs in error,
and to his brother's wife, who were already in possession
of the property, a life lease therefor.    The deed was, on its

face, made subject to the lease. By the lease the lessees were required to insure the property for the benefit, in part, of themselves and in part of the grantees. The lease recognized the grantees as the owners of the property, and for breach of any of the covenants in the lease they were authorized to declare the term ended and to enter and expel the lessees. The lease and deed were executed together, and were parts of the same transaction, whereby Martin C. Bissell disposed of all his interest in the possession of and title to the property. He reserved nothing in either the lease or deed. The delivery of the lease to and the possession of the property by William are not disputed. The right to declare a forfeiture and to re-enter was not reserved to the lessor, but to plaintiffs in error, the grantees in the deed. It would seem, from this provision, that at the time of the transaction Martin C. Bissell intended that the title should vest in appellants, and that he understood it did so vest. Then, again, it was clearly proved that after William had left the property, and Martin had taken possession and made repairs, leased it, paid the taxes and to all outward appearances acted as the owner, he told two witnesses that the property belonged to his brother's children, and that he could not, for that reason, sell or dispose of it, but would attend to it, evidently meaning that he was taking care of it for his brother and his brother's children. It may be that after the lapse of years he concluded that he was entitled to and would retain the property as his own. In other words, he may have changed his mind in reference to making a gift of the property to these beneficiaries, honestly concluding that under the circumstances he had a right to do so; but if he did so conclude he was simply mistaken as to the legal effect of what had been done. The facts are somewhat similar to those in *Douglas* v. *West,* 140 Ill. 455. See, also, *Winterbottom* v. *Pattison,* 152 Ill. 334.

We are satisfied, from the evidence, that Martin C. Bissell intended that the deed should take effect when he executed and acknowledged it and delivered it to Grinton, and it must be so held.

The decree of the circuit court is reversed and the cause remanded, with directions to dismiss the cross-bill and to enter a decree in accordance with the prayer of the bill of plaintiffs in error.

*Reversed and remanded.*