IRA FOREMAN, NEVA M. ANDREWS, and CLARA I. FOWLER, Appellants, v. MAMIE E. ARCHER, JOHN C. ARCHER, MARY BEATTIE, and MARY BEATTIE as guardian of MAMIE E. ARCHER and JOHN C. ARCHER, Appellees.

**Evidence:** STATEMENTS OF ONE SINCE DECEASED. A party to an action may testify to the statements of one since deceased, made in his presence to a third person.

**Same.** The testimony of the grantee in so far as it is not the relation of personal transactions or communications with the grantor, since deceased, is competent.

**Privileged communications.** The acts of a client done in open court and statements made by him to the court are not privileged, but may be proven by his attorney.

**Conveyances:** DELIVERY AT GRANTOR'S DEATH: REVOCATION: EVIDENCE. The execution and delivery of a deed to a third person without any reservation of right to or control over the same, and with instructions to record and deliver the same upon the death of the grantor, operates to vest the grantee with a present interest in the land which is not destroyed by the simple fact that the grantor retakes possession of the deed. Evidence reviewed and held sufficient to show that the grantor intended the deed to become effective upon her death.

*Appeal from Buchanan District Court.*— HON. A. S. BLAIR, Judge.

WEDNESDAY, MARCH 7, 1906.

ACTION in equity to set aside and declare void a certain conveyance of real estate executed by Rebecca Keenan to the defendants Mamie E. Archer and John Archer. From a decree in favor of defendants, the plaintiffs appeal. — *Affirmed.*

*Cook & Cook* and *R. E. Leach*, for appellants.

*J. T. Sullivan* and *M. W. Harmon*, for appellees.

WEAVER, J.— On October 24, 1903, one Rebecca Keenan was the owner of the property in controversy, and the defendants Mamie E. Archer and John C. Archer were her orphaned minor grandchildren, living in her home. On the date mentioned Mrs. Keenan, then a widow, made and executed in due form a deed conveying the property to her said grandchildren, with reservation of life use for herself, for the expressed consideration of love and affection and $1 in hand paid. In April, 1904, Mrs. Keenan died, and on May 2nd thereafter the deed was filed for record in the office of the county recorder. The heirs at law of the deceased grantor are Ira D. Foreman and W. D. Foreman, her sons, Mary Beattie, her daughter, Neva M. Andrews and Clara I. Fowler, children of a deceased son, and the grantees named in the deed, children of a deceased daughter. Soon after the recording of the deed as aforesaid this action was begun by the above-named son, Ira D. Foreman, and the grandchildren, Neva M. Andrews and Clara I. Fowler, to avoid and set aside the deed on the ground that the same had never made effective by delivery. By an amendment to the petition Mary Beattie and W. D. Foreman, who do not join in bringing the action, were made defendants. The answer of the defendants admits the making and recording of the deed, but denies plaintiffs' allegation of nondelivery, and avers that the deed was in fact duly delivered by the grantor at the time of its execution into the hands of a

third person for the use and benefit of the grantees, to be placed of record upon the death of the grantor. Upon a trial on the merits of the case the district court found for the defendants, and plaintiffs appeal.

I. Mary Beattie and Mamie E. Archer were sworn and examined as witnesses on behalf of the defendants, and over the objection of plaintiffs to their competency were permitted to testify to matters claimed to be within their knowledge concerning the making and delivery of the conveyance in question. As to some of these matters it is quite probable that the appellants' objection was well taken; but in our judgment this part of the testimony may be disregarded without in any manner affecting the result of the trial. Much of the testimony was not, however, vulnerable to the objection made. For instance, the facts testified to by Mrs. Beattie go almost entirely to statements made by Mrs. Keenan in the presence of the witness to a third person; and this, we have often held, is admissible. *Sweezey v. Collins,* 40 Iowa, 540; *Leipird v. Stotler,* 97 Iowa, 169; *Lines v. Lines,* 54 Iowa, 600; *Smith v. James,* 72 Iowa, 515.

It may also be said of the testimony of Mamie E. Archer that, in so far as it did not undertake to relate personal transactions or conversations between herself and her grandmother, she was entirely competent to speak as a witness.

Objection was also made to the testimony of J. T. Sullivan, who is an attorney at law, on the ground that his knowledge of the facts stated by him was obtained as a matter of professional confidence, while acting as counsel for Mrs. Keenan in her lifetime. The most material part of Mr. Sullivan's testimony related to matters done in open court, and to statements made by Mrs. Keenan to the court in making settlement of her trust as guardian of the estate of Mamie E. Archer and John C. Archer. To this extent, at least, the competency of the wit-

1. EVIDENCE: statements of one since deceased.

2. SAME.

3. PRIVILEGED COMMUNICATIONS.

ness to speak is too manifest to require argument, and, as we have already said, all other matters testified to by him may be disregarded.

II.   We now come to the principal question raised by the appeal:   Was there a sufficient delivery of the deed to sustain the grantee's claim of title?   The record tends to show that on the day the deed was made, Mrs. Keenan, who was then in ill health, sent for Mr. E. B. Abbott, a lawyer of her acquaintance, and consulted with him concerning the disposition of this property by will or by deed to the two grandchildren then living with her.   Mr. Abbott advised her that the purpose could be accomplished by a will, or a deed could be made with reservation of a life estate in herself, and placed of record for the benefit of the children, or the instrument could be executed and placed in the hands of a third person, to be recorded only upon her death.   The latter plan appears to have appealed to Mrs. Keenan as the most direct and involving the least expense, and she directed the attorney to return the next day, prepared to draw the deed.   Accordingly, on the following evening Mr. Abbott again visited Mrs. Keenan, and in her presence filled out the blank form, explaining to her the nature and effect of the conveyance, and that he would hold it and record it after her death.   The instrument was then duly executed, and the grantor gave it to Mr. Abbott, with 75 cents to pay for recording the same, and told him to keep it and place it of record after her decease.   Mr. Abbott took the paper to his office, and put it, with the recording fee, in an envelope marked " Mamie E. and John C. Archer, Deed, to be Recorded on Death of Rebecca Keenan."   This package he deposited in his safe, where it remained for some time. The only person present at the time the deed was executed, other than the grantor and Mr. Abbott, was a Miss Kinsley, who is the principal witness on part of the appellants.   Her testimony is in no manner inconsistent with that of Mr. Ab-

4. CONVEYANCES: delivery at grantor's death: revocation: evidence.

bott, whose version we have thus far followed; for, while Miss Kinsley says she "understood" Mrs. Keenan was to keep the deed, she immediately adds: " I went out of the room, and I do not know what was done with it." Indeed, she appears not to have been present during any of the conversation between the grantor and Abbott, except as she was called in to sign the conveyance as a witness and then retired. The testimony of Mr. Abbott in respect to the transaction is entirely consistent and reasonable, and no fact or circumstance is disclosed to discredit it. Later, just how long after the making of the deed does not clearly appear, Mrs. Keenan seems to have become worried by the apprehension that Abbott would have the deed prematurely recorded without her consent, and expressed to Miss Kinsley her anxiety to get it back into her possession. When she applied to him for its return, he told her that he doubted his right to give it up, as the deed was in his possession for the children; but thereafter, when Mamie came to him with a message from her grandmother asking him for it, he gave it to her. After it was brought back to her, Mrs. Keenan then asked Miss Kinsley to take charge of it, but she declined to accept it. Thereupon Mrs. Keenan placed the instrument in a satchel which she kept near her bed, explaining her purpose in language which is quite significant. We quote from the testimony of Miss Kinsley as follows: " She said I was to notify the relatives, or them. She said: ' I want some one to know where this is in case anything should happen to me. Then you can notify them.' That was her way of speaking. Her reasons for wanting to keep the deed with her were she didn't care to have all the relatives know; that was one reason, and she wanted to retain it so if the children went wrong she could change it if she wished to." So far as is shown by the record, she never changed her expressed wish and desire that these two grandchildren should have the property, unless such change is to be implied from her act in regaining possession of the deed;

nor is anything proved or suggested in the conduct of the children which would render probable a withdrawal by her of the contemplated bounty. The fact that after regaining possession of the deed she did not cancel or destroy it, but sought to deposit it with Miss Kinsley, shows simply that for some reason she wished to change the custody of the instrument from Mr. Abbott to some other person; and when, upon Miss Kinsley's refusal to accept it, she placed it in her own satchel, the act was accompanied by explanations and instructions clearly indicating her intention that the conveyance should be given effect upon her death.

The only circumstance having any tendency to sustain any other conclusion is found in the evidence of one or two witnesses, who testify that after the date of the deed and not long before her death the grantor spoke of the property as her own and sought to find a purchaser for it. Of this circumstance we have only to say that if, as contended by appellants, a conveyance made and deposited with a third person to be delivered after the death of the grantor is always subject to recall at the option of the grantor during his lifetime, the mere fact that he offers to sell his property to a third person is not alone sufficient evidence that the gift has been in fact revoked; while, on the other hand, if the conveyance, when once deposited with a third person without any reserved right or power of recall, is not revokable at the will of the grantor, then the grantor's subsequent offer to sell is of no materiality whatever. The deed remained in the satchel where it was placed by the grantor until after her death, when Miss Kinsley informed Mrs. Beattie and Mamie E. Archer of its existence, and they, acting upon this information, took possession of the paper, and caused it to be recorded.

Assuming the correctness of the foregoing statement of the facts, was there a delivery of the deed within the meaning of the law? That a conveyance made and deposited by the grantor in the hands of a third person to be delivered

into the hands of the grantee, or to be duly recorded only upon· the grantor's death, constitutes a ,good and sufficient conveyance, is too well established in this State to be the subject of controversy. *White v. Watts,* 118 Iowa, 549; *Trask v. Trask,* 90 Iowa, 318; *Hinson v. Bailey,* 73 Iowa, 544; *Lippold v. Lippold,* 112 Iowa, 134; *Albrecht v. Albrecht,* 121 Iowa, 521; *Denzler v. Rieckhoff,* 97 Iowa, 75. Indeed, cases are not wanting where a grantor having made deed to an infant dependent, has retained its actual manual possession and control during the remainder of his life, and yet the instrument has been held operative as a good and sufficient conveyance. *Tallman v. Cook,* 39 Iowa, 402; *Newton v. Bealer,* 41 Iowa, 334; *Foley v. Howard,* 8 Iowa, 60; *Stow v. Miller,* 16 Iowa, 463; *Scrugham v. Wood,* 15 Wend. (N. Y.) 545 (30 Am. Dec. 75); *Bunn v. Winthrop,* 1 Johns. Ch. (N. Y.) 329.

A deed placed by the grantor in the hands of a third person with unconditional instructions to, deliver to the grantee upon the death of the grantor, and without any reservation in the grantor of the right to revoke or recall the instrument during his lifetime, operates to vest the grantee with a present interest in the land, which the grantor cannot thereafter recall or destroy by the simple expedient of retaking possession of the deed. White v. Watts, *supra;* Albrecht v. Albrecht, *supra; Foster v. Mansfield,* 3 Metc. (Mass.) 412 (37 Am. Dec. 154); *Bury v. Young,* 98 Cal. 446, (33 Pac. 338, 35 Am. St. Rep. 186); *Prutsman v. Baker,* 30 Wis. 644 (11 Am. Rep. 5.92); *Hathaway v. Payne,* 34 N. Y. 106; *Concord Bank v. Bellis,* 10 Cush. (Mass.) 278; *Wheelwright v. Wheelwright,* 2 Mass. 454 (3 Am. Dec. 66); *Thatcher v. St. Andrews,* 37 Mich. 264; *Wall v. Wall,* 30 Miss, 91 (64 Am. Dec. 147). Such a deed, delivered to a third person to be turned over to the grantee after the grantor's death, is usually held to operate as an ordinary conveyance of the fee, subject to a life estate

reserved in the grantor. Prutsman v. Baker, *supra;* Bury v. Young, *supra;* White v. Watts, *supra.*

In the case before us there is not a particle of evidence that the delivery of the deed to Abbott was subject to any reservation of right on part of Mrs. Keenan to recall it or to exercise any further dominion or control over it. On the contrary, the testimony was clear and unequivocal that the delivery was made with instructions to keep the instrument and give it to the grantees after the grantor's death, and this we are satisfied is sufficient to sustain the conveyance as valid and effective, even under the most narrow interpretation of the rule of law now under discussion.

The question of delivery is, after all, one of intent, and if, upon an examination of the entire record, it is apparent that the grantor did not intend to part with the control of the deed, and the deposit of it in the hands of a third person was merely tentative, and the deed was to become effective only upon some further act or expression on part of the grantor, then, of course, there was no conveyance of title. But an application of this test to the showing made upon the trial does not sustain the contention of the appellants. All the circumstances surrounding the delivery of the deed to Abbott — the relationship of the grantor and the grantees; the fact that the latter were the orphaned grandchildren of the former, and were yet infants under her special care and guardianship; her express direction to Abbott to keep the deed and deliver it after her death; her payment to him of the fees necessary to secure the proper record of the instrument; and her evident appreciation of the fact that she had not long to live — all unite to sustain the claim of the appellees. There is no evidence that, even when she sought to regain possession of the deed, she had any purpose, desire, or intent to withdraw the provision she had made for these children, but rather that she wished to avoid any possibility of the deed's being placed on record before her death. In the fact that she expressed a desire to keep the transaction

from the knowledge of her children, or of some of them, we may discover a very plausible explanation of her anxiety to prevent a premature recording of the deed; and the promptness with which suit was begun after her decease suggests that her reticence in this respect was not an unwise precaution, if she wished to die in peace with her family. In our judgment the record fully sustains the finding of the trial court that there was a sufficient delivery of the deed.

It may be observed, in closing, that the conveyance of the property to the grandchildren was not wholly an act of bounty on part of the grandmother. She was their duly appointed guardian, and as such had received a considerable sum of money, for which for several years she had failed to account. On being cited to make report, she appeared and asked to be allowed for maintaining her wards a sum equal to the amount of money she had received on their account. As an inducement to such allowance she disclosed to the court her purpose to deed this property to the grandchildren, and that such conveyance had .in fact then been made, and upon this showing the court approved her claim. This circumstance is of much weight in support of the theory that the delivery of the deed was intended to be absolute and unconditional. To conclude that such was not the grantor's intent is to convict her of bad faith, and of this there is no showing whatever.

The decree of the district court is *affirmed.*