ORVILLE M. CRISWELL and ASBURY CRISWELL v. ORLANDO B. CRISWELL and MATTIE CRISWELL, Appellants.

**Deeds:** DELIVERY: INTENT: EVIDENCE.  The question of delivery of a deed is chiefly one of intent to be gathered from the circumstances surrounding the transaction as well as from direct proof; and where a deed is handed to a third person under circumstances indicating a desire and intention of the grantor that upon his death it shall be delivered to the grantee named therein, it constitutes a delivery, although there was no express direction so to do; and it is immaterial that neither such third person nor the grantee knew of the character or existence of the instrument until after its actual delivery to the grantee. Evidence held to establish an effective delivery.

*Appeal from Scott District Court.*— HON. JAS. W. BOLLINGER, Judge.

TUESDAY, JUNE 9, 1908.

ACTION in partition.   There was a judgment for the plaintiffs.   The defendants appeal.— *Reversed.*

*Salinger, Scott & Theophilus,* for appellants.

*Schmidt & Vollmer* and *W. P. Harding,* for appellees.

SHERWIN, J.— The petition states that the defendant Orlando Criswell claims to be the owner of the land in question by virtue of a warranty deed from his father, Benjamin Criswell, deceased. A copy of the deed is set out, and it is a regular deed with covenants of warranty, bearing date September 21, 1892, and duly acknowledged on January 17, 1905. The plaintiffs and the defendant Orlando B. Criswell are brothers, and the defendant Mattie Criswell is the wife of her co-defendant. The father, Benjamin Criswell, died on the 26th day of January, 1905, leaving one hundred and sixty-nine acres of land worth $100 per acre, but incumbered for $2,500. He left no other debts and no will, and the sons named were his sole heirs. It appears that the plaintiffs left their father's home early in life, many years ago, and that the defendant Orlando and his wife, Mattie, remained with the father on the farm involved in this litigation until his death. It is also shown that they farmed the place and made a home for their father and paid him rent for the use of the land from time to time. The defendants have been on the place continuously since 1884, and it appears that they took charge of it, and furnished their father a home at his earnest solicitation after the death of his wife. There is also evidence tending to prove that the father told Orlando that, if he and his wife would remain on the farm and provide him a home, they should have it. In September, 1892, the father went to Wesley Green, a retired lawyer, and asked him to prepare a deed conveying the land in question to his son Orlando, stating to Green at the time that he wished to convey it to his son at some future time, or, in the language of Mr. Green, " at the completion of the instrument." The deed annexed to the petition was thereafter prepared by Green and delivered to the father, who

kept it in his possession unsigned until the 17th day of January, 1905. At that time he was ill and unable to leave the house, and he sent for Henry Law, a justice of the peace, who went to the home and took his acknowledgment. Immediately after the deed was executed Mr. Criswell said, "I guess I don't want to give this to Orlando just yet," and put it in his own pocket. A day or two before his death Mr. Criswell called Anna Duffy, a member of the family by reason of long service therein, and told her to "go to the organ and get the paper that is in the Altoona paper, and put it in the family Bible, and keep it until this trouble is over." The deceased said the paper he wanted her to take from the organ was in a brown envelope, and she found it and took it to him. He identified it as the right one, and she put it in the Bible in his presence and with his express approval. She kept the paper in the Bible until the day after his death, when she took it therefrom and found the defendant's name on the envelope. The envelope contained the deed in question, and she then delivered it to the defendant, and he had it recorded in due time.

It will readily be seen from the foregoing statement of facts that the question of importance is whether there was such a delivery of the deed during the life of the grantor as to pass a present title to the land. The authorities are in accord that the whole question of the delivery of deeds is one of intent, and that such intent may be gathered from the circumstances surrounding the transaction as well as from direct and positive proof, and we need site no cases in support of the rule. Since the intent of the grantor is to govern, no particular words or acts are required to constitute a good delivery. If a deed be handed to a third person under such circumstances as to evidence an intention to make a delivery thereof to the grantee named therein, it is immaterial whether there be express directions so to do or not. *Foreman v. Archer,* 130 Iowa, 52; *Newton v. Bealer,* 41 Iowa, 334; *White v. Watts,* 118 Iowa, 549. In *Newton v.*

*Bealer* the facts did not as strongly indicate an intent to deliver as they do in this case. There the grantor executed a deed to a minor son, and put it with his other papers, where it was found after his death. A few days before his death he said that he had fixed his property so there would be no trouble over it after he was gone, at the same time pointing to the chest where the deed to the minor son was found. It was held that an unequivocal intention to have the deed operate as a disposition of his property was manifested, and the deed was sustained. The deceased kept his papers together in the organ and none of them, except the deed in question, were removed therefrom during his life. The separation of this deed from his other papers, and the placing of it in the care and custody of Miss Duffy, to be held until after his death, are practically conclusive that he intended a delivery thereof at that time. And this is strengthened by the fact that when he executed the deed he expressed himself as not quite ready to deliver it in person to his son. That he intended the property for the son cannot be seriously questioned. He did not wish to deed away his home until it became evident that his enjoyment of it was limited to a few days or hours. But, when he was thus convinced, what more natural or more in keeping with his often repeated declarations than the deposit of the deed with a trusted member of the grantee's family, to be by her kept " until this trouble is over ? " *Miller v. Meers,* 155 Ill. 284 (40 N. E. 577). It is not material that Miss Duffy did not at the time know what had been intrusted to her keeping, nor that she did not then know the father's intent. The only question is, did the transaction amount to a delivery of the deed so far as the grantor was concerned? *Trask v. Trask,* 90 Iowa, 318; *Albrecht v. Albrecht,* 121 Iowa, 521.

The fact that the defendant did not know of the deed until it was handed to him by Miss Duffy is not controlling. It is now almost universally held that the acceptance of a

deed of valuable property will be presumed, and that the acceptance relates back to the date of the conveyance. *White v. Watts, supra,* and cases cited therein. A deed placed with a third person without reservation or qualification, the grantor merely postponing the enjoyment of the estate until after his death, operates as a present conveyance of the fee, with a life estate reserved to the grantor. *Lippold v. Lippold,* 112 Iowa, 134; *White v. Watts, supra; Foreman v. Archer, supra.*

We are of opinion there was an effective delivery of the deed in question, and that the decree of the trial judge must be *reversed.*