Phoebe Miinch, Appellee, v. Jacob Miinch, et al.,
Appellant.

**Conveyances:** fraud: findings of court: conclusiveness. The finding of the trial court that the deed involved in this action was delivered, that the grantor was mentally competent to execute it, and that it was valid as to him, was of necessity a finding against the contention that the deed was executed through fraud.

**Same:** consideration: mental capacity of grantor: evidence. In this action the sons of grantors remained at home with their parents for several years after their maturity and until they were married, working and improving their father's farm and from the income of the farm, as a result of their labor, purchased other land. By an agreement with the sons to pay them a certain amount annually and to otherwise provide for them the parents executed conveyances of the land to the sons. *Held,* that there was sufficient consideration for the conveyances; and also that the conveyances were valid as against a claim of mental incapacity of the mother at the time of the execution of the same.

**Same:** delivery. Where the wife voluntarily joins the husband in the execution of a deed its delivery by him is effectual as against the wife.

*Appeal from Delaware District Court.*—Hon. Charles E. Ransier, Judge.

Thursday, June 16, 1910.

Action in equity to set aside certain conveyances of real estate. There was a decree granting partial relief. Defendants appeal.—*Reversed.*

*Yoran & Yoran* and *Dunham, Norris & Stiles* for appellants.

*A. M. Cloud* and *Bronson, Carr & Sons,* for appellee.

Evans, J.—Since the entering of the decree below, the above named plaintiff has died, and her administrator has been substituted as a party plaintiff. As the record is made, it will be more convenient for us to refer to the original plaintiff in our discussion of the case and to take no note of the substitution. The plaintiff was the widow of Adam Miinch, who died October 25, 1906. Prior to June 16, 1905, he was the owner of two farms in Delaware county. One of these farms was known as the home farm in Elk township, and consisted of two hundred and sixty-six acres. The other was known as the Coffin Grove farm, and consisted of one hundred and thirty-three acres. He had two sons and two daughters, Jacob, Mary, George and Flora. On June 16, 1905, he procured a notary to prepare two deeds, both of which were executed by himself and wife on that day. One deed purported to convey the Coffin Grove farm of one hundred and thirty-three acres to the son George, and the other purported to convey the home farm of two hundred and sixty-six acres to the son Jacob. They were placed in the hands of the notary with directions to deliver the same to the grantees, respectively, after the death of the grantors. Some days later, he directed the notary to make formal delivery of the deeds to the grantees during his lifetime in order to avoid any question of their legality, and to receive them back from the grantees and to hold them in trust during the lifetime of the grantors, and these instructions were followed by the notary. The plaintiff as widow brought this action to set aside such deeds and to establish her dower in the real estate in question, and made her four children parties' defendant. The two daughters joined with her in her contention, and the only parties defending are the sons, who are the grantees in such deeds. The deeds are attacked upon three grounds, viz.: (1) That they were never delivered; (2) that they were

obtained by fraud and undue influence; and (3) that the plaintiff and her husband were both mentally incompetent to make the same.

The trial court found that there was a sufficient delivery, and that Adam Miinch was competent to make the deeds, and that they were valid so far as he was concerned. This finding necessarily disposes of the question of fraud, although the trial court did not specifically pass upon it. It may be said, also that there is ·not the slightest evidence in the record of any fraud. The beneficiaries of the deeds were not present when they were executed.

1. CONVEYANCES: fraud: findings of court: conclusiveness.

The trial court found, however, that the deeds were invalid as to the plaintiff, and, as we understand the record, this finding is based upon the alleged incompetency of the plaintiff to execute the deeds. That the deeds were executed in pursuance of a previous purpose and understanding is very manifest from the record. Just what the understanding was in its details is not so clear, nor do we find it necessary to ascertain. In a general way the history of the family explains the reason for the conveyances. Jacob was the oldest of the family, and George was four years younger. Jacob had been the "boss" and manager of the farm ·since a time prior to his attaining his majority. At this time his father owned one hundred and six and two-thirds acres of the home farm, and no more. All of the children were industrious and remained at home until they were married. Mary was married at the age of twenty-four and Flora at seventeen. Each of them received assistance at the time of their marriage to the extent in value of about $1,000. They and their husbands prospered and each owned valuable farms at the time the father conveyed his farms to the sons. Three or four years after Jacob became of age, one hundred and sixty acres were· purchased and added to the home farm. Some years later the Coffin

2. SAME: consideration: mental capacity of grantor: evidence.

Grove farm of one hundred and thirty-three acres was pur-
chased; both boys continuing at home and farming the
land.   The newly acquired lands were all paid for out of
the proceeds of such farm.   George so continued at home
until he was thirty-one years of age, at which time he was
married and moved upon the Coffin Grove farm, which
he has occupied and farmed ever since.   It is claimed in
his behalf that this was in pursuance of an understanding
in the family that the first of the boys to be married should
take that farm.   He moved upon it about the year 1891,
and immediately began to improve it, and had expended
upon it prior to his father's death about $4,000 in improve-
ments.   Jacob continued with his parents until he was
forty-two years of age, at which time he was married.
Thereupon, in 1898, the parents built a home in the town
of Greeley upon lots which had been acquired in 1894 and
the title to which was taken in the name of the plaintiff;
and they moved thereto and occupied the same up to the
time of the death of the father.   Jacob remained upon the
home farm and continued to occupy and farm it, and so
continued up to the time of the death of his father.   At
the time the parents removed to Greeley, there was an
arrangement between them and the sons, whereby George
was to pay them $200 a year, and Jacob was to pay them
$300 a year and to furnish their fuel and vegetables and
perform other filial services, all of which were performed
faithfully, except that no payment was made after the
death of the father; this controversy having arisen before
the period at which such payments fell due.   As witnesses,
these defendants declared their readiness to perform these
payments to the mother as long as she should live, and we
assume from the record that they deem themselves liable
therefor if the deeds are held to be valid.

That the consideration of the deeds rested in these
facts which we have narrated in its principal substance is
very clear.   Whether there was other consideration to be

performed by way of payment to the sisters does not appear from the testimony further than that the father executed a will on June 24, 1905, wherein he provided that certain payments should be made to the daughters. We have no occasion, however, to go into this question. The sole question presented by this record is whether the deeds in question are valid and effective to convey the title to the grantees of the tracts in question. The trial court held them to be so, so far as Adam Miinch was concerned, and no appeal has been taken from that part of the decree. We have no occasion, therefore, to discuss the evidence on that feature of the case further than to say that we are satisfied that the trial court reached a correct conclusion in that regard. As already indicated, however the trial court found the conveyance invalid so far as the plaintiff herein was concerned. The only question, therefore, for our consideration, is whether the evidence in this record justifies the conclusion that the plaintiff lacked mental competency to execute the deeds at the time they were executed. We have gone through the evidence with much care and are unable to agree with the conclusions of the trial court at this point. We do not think that the evidence in this record will justify a finding of mental incompetency on the part of the plaintiff on June 16, 1905. We think that the great weight of the testimony is convincing that the mental condition of the plaintiff was normal for her years; she being seventy-seven years of age. It appears quite clear, also, that she fully understood the purpose of the deeds, and that this purpose was in harmony with her own wishes. At the time the deeds were made, the grantors had considerable money in the bank. Some time later they gave $1,000 to the daughter Flora. Since the death of the father the plaintiff gave to Flora an additional $500. This, however, is said to be in the form of advance compensation for care.

This controversy had its inception among the children.

After the death of the father, the mother went first to the old home with Jacob. Later she went to visit with her daughter Mary. In the meantime the two daughters and George filed a contest against the will, and the brewing trouble among the children made the situation of the mother pitiable enough. But we see no sufficient ground for holding that she lacked mental competency to execute the deed. If the deeds had been voluntary in the sense that they were mere gifts, a different question would arise. But, as already indicated, the consideration behind these transactions was very substantial and would have furnished abundant ground for the interposition of a court of equity to grant relief of some kind to the sons for the years of service rendered and for the improvements placed upon the land.

It is argued that there was no evidence of delivery

3. SAME: delivery. on the part of the plaintiff. But delivery on the part of the husband was enough; it being shown that the wife voluntarily joined in the execution.

It is our conclusion, therefore, that the deeds must be upheld as valid, and that the decree below must be *reversed*.