WILLIAM R. KYLE et al., Appellants, v. EDWARD S. KYLE, Appellee.

**DEEDS:** Delivery—Delivery to Third Person After Grantee's Death.
1 . Depositing a duly executed deed with a third person, with directions to deliver the same to grantee upon the death of grantor, effects a complete delivery to grantee with enjoyment postponed.

**DEEDS:** Acceptance—Presumption in Case of Valuable Property.
2 The acceptance of a deed to valuable property is, ordinarily, presumed. So *held* where a son, grantee in a deed executed by the mother, and delivered to a third party with directions to deliver to grantee after her death, was present when the deed was executed and made no objections thereto.

**WITNESSES:** Competency—Transaction With Deceased. The
3 *interest* which will destroy the competency of a witness to testify to a transaction with a deceased must be *direct* and *present*. *Held*, a stockholder in a bank was not incompetent to testify to the facts attending the execution of a deed by deceased to grantee, simply because the grantee was a debtor of the bank.

**DEEDS:** Acceptance—Evidence. Evidence reviewed, and *held* in-
4 sufficient to show that grantee in a deed did not accept the same.

**DEEDS:** Acceptance—Acceptance After Death of Grantor—Effect.
5 The acceptance of a deed, with all the burdens carried thereby, made after the death of grantor (grantor having delivered the deed, when executed, to a third party, with directions to deliver to grantee after grantor's death) goes back to. the time that said deed was left with said third party.

**DEEDS:** Delivery—Delivery to Third Party—Agency Created. The
6 act of the grantor in a deed in depositing the same with a third person, with no reservation of power in grantor to recall the deed,

and with directions to deliver the same to grantee after grantor's· death, has the effect of constituting such third party the agent of· the grantee in the holding of said deed.

*Appeal from Sac District Court.*—M. E. HUTCHISON, Judge.

MONDAY, APRIL 10, 1916.

ACTION in equity to set aside a conveyance made by the mother of the parties to the defendant. The trial court found the equities to be with the defendant, and dismissed the bill. Plaintiffs appeal.—*Affirmed.*

*Charles D. Goldsmith* and *Cummins, Hume & Bradshaw,* for appellants.

*Elwood & Tourgee,* for appellee.

.WEAVER, J.—On November 12, 1912, Caroline Kyle was the owner of 160 acres of land in Sac County, Iowa. She was a widow, with three daughters, Jane, Caroline and Lavinia, and three sons, William, Andrew and Edward. On the day named, she executed a warranty deed of the land to her son Edward, and at the same time·executed a will. The papers were drawn by one Martin, a notary and officer of the Schaller Savings Bank, and when executed were left in the possession of. said bank. The deed was made subject to a mortgage of $6,500, assumed or to be assumed by the grantee, and contained a clause reciting the agreement of the grantee to support and keep the grantor without other compensation during the remainder of her life. The will provided legacies as follows: To Jane, $400; Caroline, $1,500; Lavinia, $1,500; Edward, $1.00; William, $1,000; and the remainder of her estate was given to William and Andrew in a residuary clause reading as follows:

"Par. No. 7. To my sons, William R. Kyle and Andrew J. Kyle, I give and bequeath the balance of my property, both real and personal, to be divided equally between them."

It should here be said that the testatrix left another farm of 160 acres in the same county, which appears to have passed to the plaintiffs by this residuary devise. Mrs. Kyle died in February, 1913, and the will has been duly probated.

Plaintiffs now bring this action, alleging that the deed was never delivered by the grantor or accepted by the grantee; that the grantor thereof never parted with her title to the land in her lifetime, but died seized thereof, and that, upon her death, it passed to plaintiffs under the residuary clause of her will. The defendant admits the making of the deed mentioned in the petitition, and further alleges that, prior to the making of the deed, he had an express agreement with his mother, by which she was to convey the land to him in consideration of his undertaking to keep and support her during the remainder of her life, and in further consideration that he was to receive and accept the property so conveyed in full of his prospective right to share in the estate of which she should thereafter die seized or possessed. Defendant further avers that, by the terms of said agreement, his mother was to execute to him a deed for said land and deposit it in the Schaller Savings Bank, to be by said bank held until her death, and then to be delivered to him; that she did, in fact, execute the deed, and according to their agreement did leave it in the bank to be delivered after her death, and that, in pursuance of such direction, the bank did retain the deed until after the death of the grantor, and then delivered it to the defendant. Defendant further alleges that he fully performed his part of the agreement, by keeping and supporting his mother without other compensation during the remainder of her life. He further pleads the making of the will by his mother as above stated, and alleges that she made no provision therein for him except a nominal legacy of $1, and divided all her estate then remaining between his brothers and sisters, and this distribution was made, excluding him from any substantial benefits under the will, in recognition of the fact that, on the same day and as a part of the same transaction, she had conveyed

the farm to him in full of his right to share in her estate.
Defendant further pleads by way of estoppel that, after the
death of the grantor, he filed a claim against the estate of the
deceased, including therein certain expenses alleged to have
been incurred in the last sickness of his mother; that plaintiffs
appeared thereto by counsel and resisted the allowance of
said claim, on the ground that, by the terms of the convey-
ance of the land to him, it was the duty of the defendant to
pay said items without charge against the grantor or against
her estate, and the court, having heard the evidence upon said
issue, sustained the objection to said claim and ruled that,
under the obligation assumed by the defendant in said deed,
he was not entitled to a repayment of such expenses. Defend-
ant therefore says that plaintiffs, having asserted the validity
of the deed and of defendant's obligation therein assumed,
and having claimed and received the benefits thereof by the
rejection of the defendant's claim against their mother's
estate, are now estopped to allege or prove that said deed was
ineffective to pass the title to the land. In reply, plaintiffs
admit that defendant filed a claim as stated, and that the
same was rejected, but deny that they appeared in said pro-
ceeding or are in any way bound thereby. In turn, they allege
that the act of defendant in filing and attempting to enforce
said claim operated as an election upon his part to reject or
disavow the conveyance made by his mother, and that he is
estopped now to claim title thereunder. The issues joined were
tried to the court which, after hearing all the evidence, found
for the defendant and dismissed the plaintiff's bill.

I. The principal question presented by the appeal is the
validity or invalidity of the deed under which the defendant
claims title to the land, and this in turn depends upon whether,
within the meaning of the law, the instrument
was ever delivered. That delivery is essential
to the effectiveness of a deed to real estate is
elementary, but just what amounts to a deliv-

1. DEEDS: deliv-
ery: delivery
to third person
after grantee's
death.

ery is sometimes a question of doubt. Ordinarily, it is the simple transfer of possession of the written instrument from the grantor to the grantee, with intent on part of the grantor to convey and on part of the grantee to acquire title to the property described therein. But an actual manual transfer of the paper is not necessary. A delivery may be effected by acts without words, or by words without acts, or by both words and acts. Assuming the instrument to have been properly executed ready for delivery, acts and words evincing intent to part with it and relinquish the grantor's right over it is a sufficient delivery. *Whiting v. Hoagland,* 127 Wis. 135; *Woodward v. Woodward,* 8 Halstead's Ch. (N. J.) 779, 784. It may be made direct to the grantee or to a third person in his behalf. *Owen v. Perry,* 25 Iowa 412; *Clarity v. Sheridan,* 91 Iowa 304; *Adams v. Ryan,* 61 Iowa 733; *Matheson v. Matheson,* 139 Iowa 511, 514. In final analysis, it may be said that delivery is a matter of intent, and any distinct act or word by the grantor with intent to pass the title to the grantee by transferring the deed to him or to another for his benefit is a delivery. *Collins v. Smith,* 144 Iowa 200, 203; *Kneeland v. Cowperthwaite,* 138 Iowa 193, 194; *Schurz v. Schurz,* 153 Iowa 187, 190; *Criswell v. Criswell,* 138 Iowa 607, 609. It is also well settled in this and other states that a deed duly executed and deposited with a third person with directions to deliver it to the grantee upon the death of the grantor is an effective conveyance; that such a deed vests the grantee with the title, but his right to possession and enjoyment is postponed until the grantor's death. In such case, the delivery which the law requires to make a deed legally effective is complete when the deed is placed in the hands of the depositary; but it does not become effective for the purposes of possession and enjoyment of the property until the time comes for the secondary delivery by the person to whose keeping it has been entrusted. Sometimes the rule is stated to be that the transfer of title is effected by the delivery made by the depositary after the death of the grantor, but such

delivery takes effect by relation as of the date when the deed was placed in the depositary's hands. The result is the same on either theory. *Schurz v. Schurz,* 153 Iowa 187, 191; *Münch v. Münch,* 148 Iowa 18, 19; *Criswell v. Criswell,* 138 Iowa 607, 611; *Lippold v. Lippold,* 112 Iowa 134; *White v. Watts,* 118 Iowa 549; *Foreman v. Archer,* 130 Iowa 49; *Stewart v. Wills,* 137 Iowa 16; *Newton v. Bealer,* 41 Iowa 334; *Dunlap v. Dunlap,* 94 Mich. 11.

It is also true that an acceptance of the deed by the grantee is necessary to complete a transfer of title to land. But ordinarily, the acceptance of a conveyance of valuable property is presumed. It is not even essential to

2. DEEDS: acceptance: presumption in case of valuable property.

the delivery of a deed deposited with a third person to be delivered after the grantor's death that the grantee have any knowledge of the transaction until the grantor dies. In such case, if, when he is made aware of the deed deposited for him, he accepts it and claims the benefits of its provisions, such acceptance goes back to the date of delivery to the depositary. If such deed attaches any burden to the title or property so transferred, the acceptance of the conveyance implies the grantee's consent thereto, and such assent, like his acceptance of the title, goes back to the same date. *Everett v. Everett,* 48 N. Y. 218; *Robbins v. Rascoe,* 120 N. C. 79; *Jones v. Swayze,* 42 N. J. L. 279; *National Bank v. Bonnell,* 61 N. Y. Supp. 521; *Ensworth v. King,* 50 Mo. 477; *Wuester v. Folin,* 60 Kan. 334; *Hathaway v. Payne,* 34 N. Y. 92; *Smiley v. Smiley,* 114 Ind. 258; *Stewart v. Stewart,* 5 Conn. *320; *Elsberry v. Boykin,* 65 Ala. 336; *Bury v. Young,* 98 Cal. 446; *Crooks v. Crooks,* 34 O. St. 610; *Commonwealth v. Selden,* 5 Munf. (Va.), 160; *Haeg v. Haeg,* 53 Minn. 33; *Emmons v. Harding,* 162 Ind. 154. And, while the rules of these cases apply with less conclusiveness where acceptance involves acquiescence in burdensome obligations (see *Church v. Gilman,* 15 Wend. [N. Y.] 656), yet this court has expressly held that, where a deed of that character has been deposited by the grantor with a third

person for delivery after his death, and the grantee, after being made aware thereof, signifies his acceptance, it goes back to the date of the delivery of the deed into the hands of the depositary. *In re Estate of Podhajsky,* 137 Iowa 742, 745.

Let us, then, turn to the facts developed by the record in the case at bar. It appears that, from the death of the father of the parties, the son Edward, during most of the time, lived in the family home, and, for a period preced-

3. WITNESSES: competency: transaction with deceased.

ing the making of the will and deed, had been a lessee of the premises from his mother. He had a family of his own, and occupied the same house with his mother, who, after the manner of mothers generally, continued to busy herself in assisting in the care of the household and of her grandchildren. The rest of her children were married and were maintaining independent homes of their own. According to the witness Martin, cashier of the Savings Bank, he was well acquainted with both grantor and grantee in the deed. They were both customers of the bank. On November 11, 1912, both parties came to the bank, and at the request of the mother he drew the deed, which was then and there executed and acknowledged by her, whereupon she asked him to keep the instrument and "give it to Ed when she died." The deed having been made, the witness then proceeded, at Mrs. Kyle's request, to draw her will, and she executed it. Both papers were held by him until the death of Mrs. Kyle, when he delivered the deed to Edward, and at his request had it recorded. There is neither plea nor proof that the mother was then of unsound mind, or that the deed was procured by undue influence. Several witnesses testify that she spoke of her purpose to make such conveyance, and that, before going to the bank on the day mentioned, she stated it to be for the purpose of making the deed, and after her return home, announced that she had made a deed to Edward and left it at the bank for him. Members of the family who are competent witnesses testify also to hearing conversation between Edward and his mother, in which she told him that

she would deed the land to him, but would expect him to keep her during life, and that he responded with a promise so to do. At Martin's office, she stated to him the provisions she desired to have incorporated in the deed. Edward was present, and made no objection to the form or contents of the instrument. There is not a word of direct evidence to dispute this showing. Appellants seek to avoid its effect, first, by denying the competency of Martin to testify in the case because he was interested in the event of the suit. This objection is worked out as follows: It was drawn out on cross-examination that defendant was, at the beginning of the trial, indebted to the bank in the sum of $110.56, and that Martin was a stockholder and cashier in the bank; wherefore it is said that he is rendered incompetent to testify, under the provisions of Code Section 4604. The record is devoid of any evidence showing any disqualifying interest in the witness. The defendant did not owe him a dollar; and, even if he did, the mere fact that an offered witness is a creditor of a party to the suit is not made a disqualification by the statute, nor can we conceive it possible that any court has ever so held. Certainly counsel fail to cite any precedent of that kind. Again, the bank, which is the alleged creditor, and its stockholder or employee, are two different individuals, and the interest of the one is not, in the statutory sense of the word, the interest of the other. There is not even a suggestion that the bank itself has any lien or claim upon the property or upon defendant's interest therein, or that defendant was not perfectly solvent and able to pay all his obligations. Indeed, it was shown without dispute that, before the trial was over, the debt to the bank was fully paid and discharged. The exception to the ruling of the trial court is without merit. The interest which will disqualify a witness under the statute is direct and present. An interest which can be affected by the result of the suit only in some remote or merely possible contingency will not disqualify. *Bird v. Jacobus,* 113 Iowa 194; *Clinton Savings Bank v. Underhill,* 115 Iowa 292; *Molli-*

*son v. Rittgers,* 140 Iowa 365; *German Am. Sav. Bank v. Hanna,* 124 Iowa 374.

Counsel further say that not only did the defendant fail to accept the deed in the grantor's lifetime, but he expressly and positively refused to accept it. We think that there is no evidence of any refusal to accept the deed. **4. DEEDS: acceptance: evidence.** Martin, the one competent witness to the transaction, makes no such statement, nor does he testify to any fact from which such a conclusion can be drawn. On the contrary, he says that the parties came to his office together, defendant was there and heard his mother give directions for drawing the deed and the conditions to be inserted therein, and, while the witness does not remember that defendant verbally expressed his consent, he did not express any dissent, and the witness has no recollection that the deed was offered to him after its execution, but is certain that the mother requested that the instrument be kept by the bank and delivered to Edward after her death. The only evidence on which it is claimed that defendant refused the deed is found in a showing that, in the hearing in the probate proceedings upon a claim filed against the estate by the defendant, he was a witness, and in his cross-examination did say, in an answer to a question by counsel, that, on the day that the deed was drawn, his mother proposed to have it recorded at once, but he objected to it and did not accept the deed; but a transcript of his evidence as taken by the reporter shows that, when read as a whole, it is consistent with his present claim. Stated in his own language, he said:

"She wanted it recorded then and there and I said not to have it recorded because it was laying her under obligations to me and I would not have it. I would not accept anything to leave mother under obligation to me. I would accept nothing. I didn't accept the deed. It could be left there and be mine after her death."

Testifying in this case, defendant says that his mother, on a former occasion, executed another deed to him for the same property, which he did not accept, and it was that occasion which he had in mind when testifying in the probate proceedings. This explanation is not quite consistent with other parts of his testimony, though there is other evidence tending to show that deceased did make another deed to him for the same property, prior to the date of the conveyance in controversy, but, for some reason not otherwise explained, it was not delivered. But, assuming that his testimony in both hearings had reference to this particular deed, it is sufficiently clear that his objection, if any, was to the present recording of the deed, and that he consented that it should be deposited with the bank to be delivered after the grantor's death.

The further point made, that the acceptance of the deed which imposed upon defendant the duty of supporting his mother and assuming the mortgage indebtedness will not be presumed, is clearly controlled by the rule of the *Podhajsky* case, *supra,* even if we assume that defendant did not accept the deed until after his mother's death. We think, however, that the record sufficiently shows his acceptance on the day that the deed was made and deposited in the bank. As we have already said, defendant came with his mother to the notary for the express purpose of having the deed made; it was dictated by her and prepared by the notary in his presence; there is nowhere any testimony that he objected to any provision therein; and the only objection, if any, made by him was to the present recording of the instrument, preferring that it be left with the bank until after his mother's death. This alone would be a consent on his part to receive the title *cum onere,* and bind him to a performance of the obligations expressed in the deed.

5. DEEDS: acceptance: acceptance after death of grantor: effect.

II. Reliance is expressed by the appellants upon the proposition that the bank was the agent of the grantor, and

that a deposit of the deed in the hands of her own agent would not operate as a delivery of the instrument to the grantee; and, further, that the death of the grantor while the deed was yet in the agent's hands worked a revocation of the agency, and a subsequent delivery to the grantee was ineffectual. It seems hardly necessary to say that the universal holdings of all the courts are that the deposit of a deed with a third person to be delivered to the grantee upon the death of the grantor has effect to make the depositary the agent or trustee of the grantee, and the delivery to such agent or trustee is effectual to vest the grantee with a present interest from the date when the instrument is so deposited by the grantor. Of course, the deposit of the deed by the grantor in the hands of his own agent for safe-keeping, or to be held for the grantor, or such deposit made without instructions, would not be a delivery to the grantee; but, when the grantor deposits the deed with a third person, directing him to deliver it upon the happening of the grantor's death, no authority or control over the instrument being reserved, the possession of the custodian is for the use of the grantee alone, and, even if the grantor should repent the act and in some way repossess himself of the instrument or destroy it, the grantee's title is not thereby divested. *Matheson v. Matheson,* 139 Iowa 511, 514; *In re Bell's Estate,* 150 Iowa 725; *White v. Watts,* 118 Iowa 549.

6. DEEDS: delivery to third party: agency created.

It is next argued that a posthumous delivery is effectual only where all the conditions of the deed have been complied with. Admitting, for the purposes of the case, the correctness of the abstract proposition, we find nothing in this record to call for its application. True, some of the members of the family hostile to the defendant testify to the general conclusion that Edward and his family were living with his mother, instead of her being supported by him. This statement they justify from the fact that the place had been the mother's home for many years, that she continued to live there until

her death, and that some of them at times saw her pay for
articles for the family use. On the other hand, it appears
without dispute that Edward leased the premises; that bills
for the needs of the family, including those of the mother,
were charged to his account and paid by him. That the
mother, who evidently had means of her own, should at times
make purchases for herself or for the family was not at all
unnatural, and has little, if any, tendency to discredit plain-
tiff's claim that he did perform his duty in providing for her
support. In this connection, it must be borne in mind that
there is no condition expressed in the deed to be performed
before the conveyance should take effect. The deed itself
indicates an intention to convey a present interest (*Kneeland
v. Cowperthwaite,* 138 Iowa 193), and the so-called "condi-
tions" therein are merely statements of the consideration for
the conveyance, or at most, conditions subsequent. If the
grantor saw fit, as she evidently did, to accept the grantee's
promise to assume the mortgage and to give her a life support
as a sufficient consideration upon which to convey the title to
him, it was within her right and her power so to do. Had
the deed been conditioned to take effect only when the agreed
consideration had been furnished or performed, a very dif-
ferent problem would arise.

III. Counsel concede that the law of this state recog-
nizes the effectiveness of a conveyance deposited with a cus-
todian for delivery after the grantor's death, but say that the
rule has no application where the grantor retains control over
the deed or power to withdraw it from the deposit or change
its terms. Conceding for the purposes of the argument the
correctness of this qualification of the rule, yet there was here
no such reservation of right or authority. No witness under-
takes to say that the grantor made any such reservation or
expressed any such desire or intention. Her simple and
unequivocal instruction to the bank was to keep it and deliver
it to the grantee upon her death. In that act, accompanied
by such instruction, she divested herself of the title to the

property as completely as would have been the case had she then placed the deed in the defendant's hands, and he had at once put it of record.

Of the other exceptions enumerated by counsel to the admitted general rule, it is sufficient here to say that they are based upon assumptions of fact which we have already found are not established by the evidence.

IV. The foregoing conclusions reached upon the merits of the case render it unnecessary for us to pass upon the estoppel pleaded by the defendant. It is proper to add, we think, that to hold with appellants in this controversy would be to wholly defeat the clear intent which this mother had in the distribution of her estate. So far as appears in the record, her relations with all her children were affectionate and harmonious. Taking the deed and the will together, she made them all recipients of her bounty. She did not measure out her estate in equal shares, but we know nothing of what she had already done for her individual sons and daughters. She, of all persons, knew best the extent of her obligations to each and the merits of each. We may fairly assume that, in view of all these circumstances, her distribution of her estate was equitable, if not equal, and that, in giving this farm to Edward and the larger share of the rest of her estate to Andrew and William, she gave to each all he was entitled to ask or expect. For the court to now say that appellants, holding in firm grip the large share of their mother's estate under the residuary clause of her will, shall be permitted to defeat the deed to plaintiff, and by virtue of that same devise, which it is clear that she never would have made had she not believed she had by this conveyance provided for Edward, would be a most inequitable result. True, where such result is the necessary and inevitable consequence of adherence to established rules of law and rules of property, the court has no discretion except to declare the law as it is, regardless of its effect upon the litigants; but law has been framed and courts organized to prevent, rather than to promote, miscarriages of justice, and

it is only in very exceptional cases that they wholly fail in their mission.

It is to be admitted that defendant does not wholly purge himself of the taint of selfishness manifest in some of his actions in the premises, but in this respect neither are the plaintiffs in position to become his critics. We commend them all to the careful and prayerful study of Genesis xiii, 8, and the 133d Psalm.

The decree appealed from is right, and it is therefore— *Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.