H. H. EVERTS, Appellant, v. J. T. EVERTS *et al.*, AND
CHARLES H. EVERTS, Appellant, v. J. T. EVERTS *et al.*

Deeds: ESCROW: RIGHT TO RECALL. Where a father executes
   deeds conveying his real estate to his sons and places the same
   in escrow, with instructions to deliver them upon his death,
   but retaining the title and control of the deeds and the right
   to withdraw them, the transaction is of a testamentary char-
   acter and the father has the right to cancel the deeds at pleasure.

*Appeal from Tama District Court.*—HON. G. W. BURNHAM,
Judge.

FRIDAY, APRIL 10, 1903.

CONTROVERSY over certain lands. The causes were sub-
mitted together. The facts sufficiently appear in the
opinion. The petitions were dismissed, and plaintiffs
appeal.—*Affirmed.*

*Caldwell & Walters* for appellants.

*Struble & Stiger* and *Endicott & Pratt* for appellees.

LADD, J.—Two tracts of land are involved in this con-
troversy—eighty acres claimed by Charles H. Everts, and
one hundred and ten acres by H. H. Everts, only children
of the defendant J. T. Everts, who was seventy-five years
old at the time of the trial. Their mother had died early
in 1900, and apparently this trouble was precipitated by
the father's contemplated second marriage, subsequently
consummated. Shortly after his first wife's death, an
attorney was employed to prepare deeds to his sons of the
tracts as above stated; also a lease of eighty acres to
Charles for twenty years at the annual rental of $180, and
another to H. H. for the same period at the annual rental
of $238; lessee to pay taxes, and said leases to terminate

at lessor's death. The father signed and acknowledged all these instruments and the sons the leases. The deeds never passed to the possession of the grantees, but were handed to Ralph Moore with instructions to deliver to them upon the father's death. It is contended, however, that what in fact occurred amounted to a delivery because of a valuable consideration paid and an understanding that they were not to be subject to recall. It may be, if these conveyances had been executed, as claimed by appellants, in consideration of the leasing of the land and the payment of $1 each and the expenses incident thereto, and had been placed with Moore in pursuance of such arrangement without instructions, save to deliver at the death of the grantor, or under an agreement, as contended by appellants, that they should not be withdrawn save by mutual consent, the grantor might not have lawfully withdrawn or destroyed them. But the burden of proof was upon the plaintiffs to establish this state of facts.

Opposed to their version of the transaction is the positive testimony of the scrivener and the defendant Everts to the effect that there was an explicit understanding that the latter should retain title and control of the deeds until his death, and that said deeds were left with Moore, as he also declared, subject to the father's right to withdraw them. The rental stipulated was less than the reasonable value of the use, and the long period of the lease is not inconsistent with this view, as Charles had already farmed the eighty, twenty years, and H. H. a part of the one hundred and ten acres fifteen years, and his son the remainder for six years. The change from share to cash rent is explained by the breaking up of the father's home, his wish to be relieved from care, and his intention to travel. All the circumstances are in harmony with the defendant's contention, and we are inclined to think it correct, especially as this conclusion is in accord with the finding of the district court, having the advantage of

observing the witnesses and hearing the testimony given orally. The entire arrangement seems to have been of a testamentary character, adopted in order to equitably distribute the parent's estate in event of his sudden death without the aid of the courts; and, but for the intrusion in his life of a sentiment not anticipated at the time, would, in all probability, have been carried out. But, according to Weaver, J., in *Perkins v. Perkins*, 116 Iowa, 253, "the mating instinct does not necessarily wane with advancing years," and, even though these deeds were obtained from Moore, and destroyed, as a condition precedent to his marriage, imposed by the woman of his choice, he did no more than he had the right to do in the control of his own property. *Shirly v. Ayres*, 14 Ohio, 317 (45 Am. Dec. 546); *Fitch v. Bunch*, 30 Cal. 213; *Berry v. Anderson*, 22 Ind. 36; *Cook v. Brown*, 34 N. H. 460; *Prutsman r. Baker*, 30 Wis. 644 (11 Am. Rep. 592); *Tyler v. Hall*, 106 Mo. 313 (17 S. W. Rep. 319, 27 Am. St. Rep. 337).

The claim of appellants that their father had given them the respective tracts many years previous is in conflict with every fact proven in the case. It seems that Charles sold his father thirty of the one hundred and ten acres, and both sons testify that the former was to have eighty acres and to improve it as he saw fit. But the only improvement was its proper cultivation and the construction of a new fence in the place of an old one. The thirty acres are said to have been given to H. H. Everts, and to have been included with his own farm in fencing. The payment for the use of this land for fifteen or twenty years in cash or with a share of the crop, regardless of whether denominated support or rent, and the acceptance of the twenty year leases, are facts so inconsistent with the claim of gift as to scarcely need the father's denial and proof of his payment of the taxes in confirmation of the conclusion that transfer of title or ownership was neither intended nor effected. We do not

pretend to review the evidence in detail, but content our-
selves with stating barely enough to indicate the conclu-
sions reached.    The law applicable is so elementary as to
demand no elucidation.

Our conclusion is that both causes were rightly de-
decided, and must be AFFIRMED.