FRANCIS EUGENE HESS, Appellee, v. KERNEN BROTHERS, Appellants.

**DEED:** Construction—Grant of Fee—Rejection of Repugnant Clause
1  —When Rule Inapplicable. That the clear grant of a ''fee title'' demands the rejection of a subsequent repugnant clause is a rule not applicable when the granting clause itself contains a limitation on the fee.

PRINCIPLE APPLIED: A father, conveying his entire fee, provided:

1. That his son Francis take ''an estate for life or for years,'' on certain conditions, a violation of which worked a forfeiture.

2. That if Francis did not breach the conditions, he should have a full life estate.

3. That if the estate of Francis was ended by breach of conditions or by death, and he was then married, his wife should take an estate as long as she remained his wife or widow, ''but the fee simple title shall pass to and be vested in the issue of Francis if any there be who are living at the time of his death.''

4. That ''if Francis shall be without issue, at the termination

of his estate, the fee simple title shall vest in (four other named children of grantor) liable to be divested by the birth of children to Francis, after forfeiture and before his death.''

5. Francis, who had no wife or issue, breached the conditions.

*Held:* The four other children did not, on the forfeiture of Francis, take a ''fee simple title'' as declared, but a ''determinable fee''—a fee liable to be terminated by the existence of living children of Francis at the time of his death.

*Appeal from Taylor District Court.*—HON. H. K. EVANS, Judge.

WEDNESDAY, DECEMBER 16, 1914.

REHEARING DENIED MONDAY, MARCH 22, 1915.

ACTION to quiet title. Opinion states the facts. *Reversed* and *Remanded.*

*G. B. Haddock,* for appellee.

*Crum, Jaqua & Crum,* for appellants.

GAYNOR, J.—On the 26th day of August, 1913, the plaintiff filed his petition asking that the title to certain land be quieted in him for the use and benefit of the defendants, Kernen Bros., and that the defendants and each of them, except Kernen Bros., or those claiming by, through, or under them, be forever barred and estopped from claiming any interest in the real estate.

Kernen Bros. alone appeared and filed answer in which they say that on the 30th day of June, 1913, they entered into a contract with the plaintiff for the purchase of the real estate in controversy; that the plaintiff agreed to convey said real estate to them by warranty deed, and agreed to furnish them an abstract of title showing perfect title in the plaintiff as of that date. Admitted that if the court granted the plaintiff the relief demanded in its petition against all the defendants, except these answering defendants, Kernen Bros., the

title will then be good and perfect in the plaintiff except for the things hereinafter set out.

The defendants say that on the 30th day of June, 1904, one C. C. Hess, who was the father of the plaintiff, owned said land absolutely; that on said date he executed and delivered to the plaintiff an instrument of conveyance as follows:

"Par. 1. That I, C. C. Hess, unmarried, of Taylor County and State of Iowa, in consideration of love and affection, do hereby convey to the persons hereinafter named, and upon the terms and conditions hereinafter named, the following described real estate, situated in Taylor County, Iowa. (Here follows a description of the land in controversy with other land.)

"Par. 2. I convey to my son, Francis E. Hess, an estate for life or for years in the above described real estate subject to the express conditions that he shall not sell or encumber his estate by his voluntary act nor shall he do any act by which his estate may be divested by any legal process; and upon the happening of any event, as an attempt on his part to sell or encumber his estate, or the seizure of his estate under execution or attachment or other legal process, or the advertisement for sale of the above land for the nonpayment of taxes or assessments, then the rights, interest, and estate of Francis E. Hess shall be forfeited, and be at an end, and the above real estate shall then pass to the persons hereinafter named, with title as hereinafter set forth.

"Par. 3. If my said son, Francis E. Hess, shall not do any act or suffer anything to be done that will work a forfeiture of his estate, as above provided, he is to have the full use and enjoyment of said land during the term of his natural life, and upon his death, the above real estate shall pass to the persons hereinafter named, with title as hereinafter stated.

"Par. 4. If, at the time of the termination of the estate of Francis E. Hess, either by death or forfeiture, he is then married, his wife or widow shall have an estate in said land

as long as she remains his wife or widow, but the fee simple title shall pass to and be vested in the issue of Francis E. Hess, if any there be, who are living at the time of his death, meaning and intending that the descendants of any child that may be dead shall take the share that would have fallen to the parent if living.

"Par. 5. If Francis E. Hess shall be without issue at the termination of his estate, the fee simple title to the above real estate shall vest in my four children, Arthur L. Hess, Ethel Graff, Hope Hess and Florence Hess, in equal shares, or to the survivor or survivors of them, unless any of the four persons last above named shall have died prior to the termination of the estate, leaving issue, in which case, the share that would have gone to the deceased shall vest in the issue of such deceased, the estate thus granted to the four persons above named being liable to be divested by the birth of children to Francis E. Hess after forfeiture and before his death."

On the 20th day of March, 1913, the plaintiff made and delivered to Arthur L. Hess, Ethel Graff, Hope Hess Thorsen and Florence Hess, the following instrument of conveyance·

"Know all men by these presents:

"That I, Francis E. Hess, single, for a valuable consideration, do hereby surrender, renounce, release and convey to Arthur L. Hess, Ethel Graff, Hope Hess Thorsen, and Florence Hess, in equal shares, all the rights, title or interest that I have acquired through a certain deed made by C. C. Hess, dated June 30, 1904, and recorded in Taylor County, Iowa, on July 2d, 1904, in book 13 on page 597 and 598, of deed records to the following described lands, to wit:

"The south half of the northwest quarter of section thirty-one, township number sixty-nine, north, range number thirty-three, west of the 5th P. M. (and other land).

"The intention of this instrument is to divest myself of all title to the above described real estate, whether derived through said deed or otherwise, and to invest the above named persons therewith.

"The person above named as Hope Hess Thorsen is the same person described in the deed above referred to as Hope Hess."

On the 21st day of March, 1913, the persons named as grantees in the last instrument conveyed the land in controversy, to wit, the south half of the northwest quarter of Sec. 31, township 69 north, range 33 west of the 5th P. M., and the other land described in the deed from C. C. Hess to Francis E. Hess, to one W. E. Crum, Taylor County, this state, by special warranty deed.

On the 12th day of April, 1913, W. E. Crum and wife conveyed the land in controversy by special warranty deed to the plaintiff, Francis E. Hess.

All these deeds were properly acknowledged and recorded.

During all the time since the making of the first deed to him, Francis E. Hess has been an unmarried man and without issue. Arthur L. Hess is now a married man and has one child. Ethel Graff is a married woman and has one child. Hope Hess is a married woman, her name being now Hope Hess Thorsen, and is without issue. Florence Hess is unmarried.

The defendants aver in their answer that because of the condition of the instrument made by C. C. Hess, conveying the land in question to Francis E. Hess, the plaintiff has not a good title, and cannot convey said real estate to the defendants by good and perfect title. Wherefore, they ask that they be allowed to rescind the contract and that the court declare the title not good and perfect such as defendants are entitled to under the contract.

To this answer, the plaintiff demurred, and the demurrer was sustained. Thereupon, defendants electing not to plead further, the court entered the following decree:

"It is therefore ordered, adjudged and decreed that title be and the same is hereby quieted in the plaintiff in and to the south half of the northwest quarter of Sec. thirty-one,

township sixty-nine north, range thirty-three west in Taylor County, Iowa, subject to plaintiff's contract to convey to defendants, Kernen Brothers, and the defendants, and each of them, and all persons claiming by, through or under them, or either of them, except Kernen Brothers, be and they are hereby estopped from ever having or claiming any title or interest in and to said premises. Subject only to the contract made with Kernen Brothers to convey, which conveyance when made by said Francis E. Hess to said Kernen Brothers, the court declares, will and does pass a good and perfect title to said Kernen Brothers.

"The defendants, Kernen Brothers, except."

From the ruling on the demurrer and the decree so entered, the defendants have appealed to this court, claiming that the court erred in sustaining the demurrer and in finding and holding that a good and perfect title to the land in controversy was in Francis E. Hess, subject only to the contract made with these defendants, and in holding that a conveyance, when made by Francis E. Hess to these defendants, would pass a good and perfect title to them.

A proper understanding of the disposition which we make of this case requires a careful analysis and a clear understanding of the several provisions of the deed from C. C. Hess to the plaintiff, under which, and by virtue of which, the title to this property rests in him. For convenience in reference we will divide the deed into five parts, numbering them paragraphs 1, 2, 3, 4 and 5.

By the first paragraph of the deed the then owner, C. C Hess, undertook to and did divest himself of all title in the land and conveyed the same to persons thereinafter named in the instrument, leaving no reversionary interest in himself.

1. DEED: construction: grant of fee: rejection of repugnant clause: when rule inapplicable.

By the second clause of the deed he conveyed to Francis E. Hess a life estate or estate for years. This life estate or estate for years so created is upon express conditions, upon a violation

of which the rights and interests of Francis become forfeited, and at an end, and the real estate thereupon passes to others named in the deed, leaving nothing in Francis of title or right to the land under this clause of the deed.

The third clause, however, provides that in the event Francis does not forfeit, he is to have the full use and benefit of the land during his natural life, and upon his death the estate passes to persons thereinafter named.

The fourth clause provides that if, by any act of Francis done in violation of the prohibitions of the second clause, he forfeits his life estate or his estate for years, and he is then married, his wife shall have an estate in the land, as long as she remains his wife or widow, but if his estate is forfeited by death, and he is then married, his widow shall succeed to and have an estate in the land as long as she remains his widow. But, in either event, if his estate be terminated by death, or forfeited, and he is then married, his wife or widow, as the case may be, shall have an estate as long as she remains his wife or widow, but the fee simple shall pass to and be vested in the issue of Francis, if any there be, who are living at the time of his death.

By this fourth paragraph, it would appear that the grantor intended that if Francis forfeited his interest in the land by doing any of the acts prohibited, and was then married, an estate vested in his wife, and rested in her as long as she remained his wife or widow, and no longer; that if his title terminated by death, then if married his widow became invested with an estate in the land as long as she remained his widow. This would indicate an intention on the part of the grantor to make provision for the wife or widow of Francis upon the termination of the estate granted him, and clearly, under this provision, if Francis were married at the time of forfeiture, his wife would become vested with an estate in the land which would continue during the time she remained his wife or widow, and the fee would become vested in his issue, if any then living, and the passing of the estate would

be complete. But Francis, at the time of the termination of the estate, was not married and had no issue, and the fifth clause of the deed provides that if he be without issue at the termination of the estate the fee simple title would pass to the four children named in that clause of the deed.

If nothing further appeared it would seem that upon forfeiture of his right in the land by Francis, at a time when he was unmarried and had no issue, the title would pass to the four persons named in the fifth clause. The fifth clause provides, however, that if Francis shall be without issue at the termination of his estate, either by death or forfeiture, the fee simple title to the land shall vest in the four children named in that clause, subject, however, to be divested by the birth of children to Francis *after forfeiture*. The estate may terminate in two ways by the terms of the deed, either by the death of Francis, or by forfeiture. This last provision of the fifth clause is the troublesome one. We would not have much difficulty in disposing of the case if it were not for this clause.

It is fundamental in the consideration of deeds that the deed must be considered as an entity, and the whole deed and all it contains considered in determining its meaning and legal effect. See *Beedy v. Finney,* 118 Iowa 276, and cases therein cited.

It therefore becomes important in this case to ascertain from the reading of the whole instrument what the testator intended by the words, ''The estate thus granted to the four persons above named being liable to be divested by the birth of children to Francis after forfeiture.'' The importance of these words is emphasized, and the attention of the mind drawn to a consideration of the whole deed because of these words, and the express provision found in the fifth clause, to wit, ''that if Francis E. Hess shall be without issue at the termination of his estate, either by death or by forfeiture, the fee simple title to the real estate shall vest in these four children above named, share and share alike and to their heirs.'' It becomes important to determine under what con-.

tingency or upon the happening of what event provided for or against in the deed, the "liability" rests, upon which these four persons are to be divested of the fee simple title to the land, and in whom it vests in case these four are divested. The answer to this must be found, if at all, in the fourth clause of the deed. It is the only clause of the deed in which any provision is made for the vesting of title in the children of Francis E. upon forfeiture. The fourth and fifth clauses must, necessarily, be considered together in arriving at the true meaning and intent of the grantor. Considered together they provide that upon the termination of the estate of Francis by forfeiture, the fee simple title shall pass to and be vested in the issue of Francis, who are living at the *time of his death*, if any there be. If there are none *in esse*, at the time of forfeiture, the fee simple title shall pass to the four named in the fifth clause, subject to be divested by the birth of children to Francis after forfeiture. The fourth and fifth clauses, taken together, would seem to indicate that upon the termination of the estate of Francis, the fee simple title would pass to and vest in the issue of Francis, whether born before or after forfeiture, if living at the time of his death. In no other way can we harmonize the provision in the fourth clause with the provision divesting title found in the fifth clause. The fourth clause gives the fee simple title to the issue of Francis, if any there be, who are living at the time of his death, and the provision in the fifth clause would indicate the intention of the testator to vest the title in the issue of Francis who are living at the time of his death, whether born before or after forfeiture, and that the title conveyed to the four named in the fifth clause, was subject to the contingency of a birth of a child to Francis at any time before his death, either before or after forfeiture.

The testator knew at the time this deed was made that Francis was an unmarried man, and therefore had no legitimate issue. He recognized the possibility that Francis would forfeit the estate, because it is a contingency against which

he made provision. He knew that possibly Francis would marry, either before or after forfeiture, and that issue might come of that marriage. The deed seems to make provision in contemplation of marriage, and of issue, born either before or after forfeiture. Such a contingency seems to have been in the mind of the grantor, and there seems to have been an evident purpose in his mind to make provision for such contingency. The grant made in the deed to the parties named in the fifth clause seems to have been made in contemplation of and upon condition that there be a definite failure of issue at the time of the death of Francis.

The idea of the testator seems to have been to create two estates in fee, neither depending on the other for its existence; the vesting of one depending upon the happening of a future event; the other vesting immediately, but its duration depending upon the happening of the same event. The four named in the fifth clause took a base, qualified, or terminable fee,—terminable upon the birth of issue to Francis after forfeiture, an event that might or might not happen. The possibility of its happening, however, seems to have been in the contemplation of the grantor. If children were never born to Francis, the fee in these four became absolute, but not until the death of Francis without issue.

The use of these words—base, qualified, and terminable, as signifying practically the same thing, in view of the early distinctions made in the use of the words, and the technical significance given to them,—may be the occasion of some criticism, but we think the general tendency is to consider them as practically interchangeable, and we use them in the sense in which the words themselves are understood, independent of technical meaning.

If the grantor had made the vesting of title in the issue of Francis dependent wholly upon the existence of the estate granted to Francis, the destruction of that estate before the birth of children might destroy the contingent estate of such unborn children, and we think the case of *Archer v. Jacobs,* 125 Iowa 467, so holds.

We are not unmindful of the rule that, when a deed is executed, and the granting clause conveys a fee title to a person named, any provision in the deed thereafter repugnant to the grant has been held to be void, and we think *McCleary v. Ellis*, 54 Iowa 311, *Case v. Dwire*, 60 Iowa 442, *McCormick Harvesting Co. v. Gates*, 75 Iowa 343, *Teaney v. Mains*, 113 Iowa 53, *Beedy v. Finney*, 118 Iowa 276, and *Prindle v. Orphans' Home*, 153 Iowa 234, support this conten tion of appellee.

But this rule does not apply where, in the very granting clause itself, the limitation upon the rights of the grantees is expressly made, or, in other words, if the conditional element is incorporated in the description of, or into the gift to the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder still remains vested. It is said in *Birdsall v. Birdsall*, 157 Iowa 363, 368,—and we think what is there said is apropos to the matter under discussion here: ''It is to be noticed that by the language of the will in question the condition on which the children or their issue are to participate in the remainder is clearly precedent, and not a condition subsequent. The provision is not that the children are to take the remainder with the condition that in the event any one of them shall die his interest shall be forfeited, unless he shall have issue, in which event the issue shall take such interest, but on the other hand, the condition is expressed directly as a description of the persons in whom the remainder shall vest, and it is to vest in no particular person until such description becomes applicable by the termination of the life estate.''

A conditional fee is somewhat different from an estate upon condition, and a conditional limitation is sometimes said to be a qualification upon the fee, and is distinguished from an estate upon condition. In case of a conditional limitation, the estate terminates upon the happening of the event expressed. In case of an estate upon condition, the estate is liable to be defeated, but is not in fact defeated until the

person who has a right to avail himself of the condition is in a position to do so, or, as some books say, has a right to avail himself of the condition, and enters and terminates the estate.

We think that the estate granted to the four named in the fifth clause, though designated as a fee simple title, was, by the terms of the grant itself, determinable upon the birth of children to Francis, a contingency that may or may not happen. When it does happen, the rights of these four under the grant are divested. We think that the deed itself contemplates the vesting of a contingent remainder in the issue of Francis living at the time of his death, and the plaintiff has not, therefore, acquired all the interest created by the deed. Children may be born to Francis who survive him, and their interests have not by any of the conveyances vested in Francis.

We think the case of *Birdsall v. Birdsall,* 157 Iowa 363, though not directly in point upon all the questions here submitted, is authority for the conclusion we have reached. See also *Friedman v. Steiner,* 107 Ill. 125; *Chapin v. Nott,* 203 Ill. 341; *Archer v. Jacobs,* 125 Iowa 467; *Shafer v. Tereso,* 133 Iowa 342.

We think therefore, in conclusion, that the deed conveyed a contingent fee to the issue of Francis, and this, whether *in esse* or not at the time his rights terminated, if afterwards born and living at the time of his death; that it gave to the four named in the fifth clause a determinable fee, the duration of which depends upon whether or not there are children born to Francis, living at the time of his death; that immediately upon the death of Francis with living issue, the rights of the four named in the fifth clause of the deed are terminated. The court therefore erred in holding that the several conveyances, hereinbefore set out, gave to the plaintiff a perfect title in the land in controversy. He had only the rights that the parties named in the fifth clause had at the time of their conveyance, and that was a determinable fee.

For the reasons above stated, the cause must be reversed and remanded.—*Reversed* and *Remanded.*

LADD, C. J., DEEMER and WITHROW, JJ., concur.