FRANCIS BRADLEY et al., Appellants, v. FRANCIS BRADLEY et al., Appellees; MARY BRADLEY LOGUE et al., Interveners, Appellants.

**DEEDS:** Presumption of Title—Sufficiency of Evidence to Overcome. The presumption ordinarily obtaining, that the beneficial ownership is in the holder of the legal title, held, in a suit to declare a deed void, to have been clearly overcome by the evidence.

**DEEDS:** Validity—Undue Influence—Insufficiency of Evidence. Evidence reviewed, and held insufficient to show undue influence in obtaining a deed.

**DEEDS:** Validity—Undue Influence—Incompetency of Evidence—Statements of Grantor. Testimony of a witness that the grantor in a deed stated "that they tortured him so, they wanted him to sign a will and sign over everything to them," was incompetent, and entitled to no weight as evidence of undue influence, in an action to declare a deed void.

**DEEDS:** Validity—Presumptions—Confidential Relations. The mere fact that the grantor and the grantee were brothers is insuffi-

cient to raise any presumption of fraud or undue influence, in an action to set aside a deed.

DEEDS:  Validity—Unsound Mind—Sufficiency of Evidence.  Evidence reviewed, in an action to set aside a deed, and held sufficient to show that grantor was of sound mind.

DEEDS:  Requisites and Validity—Deposit for Delivery after Death —Title not to Pass during Life.  A provision in a deed that title to land is not to pass while the grantor lives, was not equivalent to a declaration that the grantee should have "no interest" during the life of the grantor.  *Held* that, under all the provisions of the deed and the circumstances under which it was made and deposited for delivery after the death of the grantor, the deed took effect by relation as of the date of such deposit.

DEEDS:  Requisites and Validity—Deed Effective after Death of Grantor—Acceptance.  A deposited instrument was, in all essential features, a deed of conveyance, subject only to the postponement of its completed delivery until the death of the grantor, and the grantee acquired an interest therein which would ripen into a legal title upon the termination of the grantor's life; and, where the deed stated in terms that it was given in consideration of $2.00 and care and support while grantor lived, and that its delivery to the grantee was in lieu of no charge for any care and support, and where such support was given the grantor, *held* that the acceptance by the grantee, after the death of the grantor, of the benefits of such conveyance was the legal equivalent of an express acceptance of the same at the date of the deed.

DEEDS:  Requisites and Validity—Deposit to Take Effect after Death —Vesting of a Present Interest.  A deed deposited to be held until the death of the grantor shows a purpose to clothe the grantee with a perfected title upon the death of the grantor, and is sufficient to invest grantee with a present interest in the land, and constitutes a valid interest, in law and in equity.

*Appeal from Fremont District Court.—*O. D. WHEELER, Judge.

APRIL 16, 1919.

SUIT in equity to establish and confirm the plaintiffs' and interveners' claims of title to certain land, and to set aside a certain deed to the defendant Francis Bradley. The

trial court, after hearing the evidence, found for the defendants, dismissed the bill, and plaintiffs and interveners appeal.—*Affirmed.*

*Ferguson, Barnes & Ferguson,* and *J. E. Van Dorn,* for appellants.

*Tinley, Mitchell, Pryor & Ross,* for appellees.

WEAVER, J.—Barnard Bradley, a resident of Fremont County, Iowa, died intestate, May 4, 1905. Some 20 years or more prior to his death, he acquired the legal title, by deed from one Yocum, to a tract of 136 acres of land in said county, and retained the same until January 21, 1905, at which time he made and executed a deed in the following form (omitting certificate of acknowledgment):

"Warranty Deed.

"Know All Men By These Presents: That I, Barnard Bradley, single, of the county of Fremont and state of Iowa, in consideration of the sum of two dollars and care and support while I live in hand paid by Francis Bradley of Fremont County and state of Iowa, do hereby sell and convey unto the said Francis Bradley the following described premises, situated in the county of Fremont and state of Iowa, to wit: All that part of the southeast quarter of Section Number Thirty-five (35) in Township Number Seventy (70) north of the center of the track of the Wabash Railroad Company, containing one hundred thirty-six acres more or less as surveyed by the county surveyor.

"The title to this land is not to pass while I live. This deed to be held in escrow at the Shenandoah National Bank, Shenandoah, Iowa, to be delivered at my death, and is to be in lieu of any charge for my care and support.

"And I hereby covenant with the said Francis Bradley that I hold said premises by good and perfect title; that I have good right and lawful authority to sell and convey the

same; that they are free and clear of liens and incumbrances whatsoever.

"And I covenant to warrant and defend the said premises against the lawful claims of all persons whomsoever.

"Signed the 21st day of January, A. D. 1905.

his

"Barnard (x) Bradley.

mark

"In the presence of J. H. Bradley."

When he had made this instrument, he placed it in the hands of the scrivener, one Bogart, an officer in the bank named in the deed, telling him to keep it until he, the grantor, had "passed away." Bogart took the paper, and held it in the bank until the grantor died, when he caused it to be recorded. When Barnard Bradley died, the defendant grantee, Francis Bradley, was in possession of this land, and has ever since remained therein. No claim adverse to the title which said deed purports to convey was made by the plaintiffs or interveners until this action was begun, on April 5, 1915, within one month of the expiration of the 10-year period from the death of the grantor. No administration was ever had upon the estate of Barnard Bradley. The deceased left neither wife nor child nor other lineal descendant; and one defendant, Francis Bradley, a brother, and the plaintiffs and interveners, who claim through other brothers and sisters, now deceased, are his only surviving heirs at law.

The petition in this case asks that this deed, set out, be declared void and of no effect, and that the title to the land be established in the several parties, in the share and proportion to which they severally would have been entitled, had such deed never been made, and Barnard Bradley had died seized of the absolute title to the property. As grounds for this demand, it is alleged:

1. That the instrument was not, in fact, signed or executed by Barnard Bradley.

2. That, at the date of the alleged deed, Barnard Bradley was of unsound mind, and incompetent to make a valid deed.

3. That the alleged signature of Barnard Bradley was not witnessed as the law provides, and was not acknowledged before a person competent or authorized to so act.

4. That the signature of Barnard Bradley to the deed was obtained by undue influence on the part of the grantee.

5. That the deed is void for want of due delivery in the lifetime of the grantor.

6. That the deed does not purpose to grant any present interest in the land, and is not validly executed as a testamentary disposition of the property.

It is further alleged that the defendant Francis Bradley has been in the exclusive possession of the land, enjoying its rents and profits, for which an accounting is prayed. Answering the petition, the defendant Francis Bradley admits that, at the date of the deed, the legal title to the land was in Barnard Bradley, but alleges that he himself was then, and for many years had been, the equitable and true owner of the north 56 acres of the 136-acre tract of land, and that, in so far as that part of the land is concerned, the effect of the deed was simply to clothe him with the legal title which was rightfully his. Moreover, he alleges that, for 20 years or more, he has been in the open, notorious, exclusive, and hostile possession of said 56 acres, under claim of right, and that his title thereto is now unassailable by the heirs of Barnard Bradley.

As relates to the remaining 80 acres of said tract, the defendant alleges that Barnard Bradley lived to the age of 62 years; that he never married; and that, by reason of an injury received in early life, he was at all times so disabled as to be unfit to work, or to properly care for himself, and

for many years before his death had made his home with the
defendant, who supported and cared for him; that the deed
in controversy was made in recognition of the situation and
relation of the parties, as above stated, and in further con-
sideration of the care and support of the said Barnard Brad-
ley during the remainder of his life, all of which was in fact
furnished and provided by the defendant.

Other defenses are pleaded; but, in view of our conclu-
sion in regard to those already indicated, further statement
of the issues is unnecessary.

I.   Turning first to defendant's claim of title to the
north 56 acres of the tract, it appears from the record, with-
out serious dispute, that the 136-acre tract, together with
an additional 190 acres, was formerly owned by Yocum, who
conveyed the larger tract to the appellee Francis Bradley,
and the smaller to his brother, Barnard Bradley. Time was
given to each for a large part of the purchase price, and
payment was secured by their several mortgages upon their
respective tracts. Francis appears to have paid off his in-
debtedness within a few years, but Barnard found difficulty
in removing the mortgage on his part, and entered into an
agreement with Francis whereby the latter purchased or
took over the north 56 acres of the 136-acre tract, and as-
sumed and paid the debt to Yocum; but no formal convey-
ance of the 56 acres to Francis was ever made, until the ex-
ecution of the deed in controversy. A partition fence was
erected, separating his land from the remaining 80 acres,
and it was thereafter occupied, possessed, and used exclu-
sively by Francis as a part of his own farm, with all the acts
of dominion and control usually exercised by owners over
their own property, and without any appearance of objec-
tion or protest or adverse claim by Barnard. Moreover,
there is abundance of proof that Barnard, on different occa-
sions, stated to others that his brother was the owner of this
portion of the land, and his own conduct was at all times

consistent with the truth of such admissions.

**1. DEEDS: presumption of title: sufficiency of evidence to overcome.**

As against this conclusion, the appellants' sole reliance is upon the presumption which ordinarily obtains that the beneficial ownership of property is in the person having the legal title; but in our judgment, such presumption is so clearly overcome as to establish, beyond reasonable doubt, the claim of the appellee to have been the equitable and beneficial owner of this 56-acre tract, from a date long prior to the making of this deed.

II. Confining our attention, therefore, to the issues as they affect the remaining 80 acres of the tract described in the deed from Barnard Bradley to the appellee, we have first

**2. DEEDS: validity: undue influence: insufficiency of evidence.**

to consider the allegation of the petition that the said conveyance was procured by fraud and undue influence.

Of the truth of the claims made by the appellants in this respect, there is a distinct failure of proof. There is an entire absence of evidence that the appellee or any other person in his behalf ever at any time asked or demanded such conveyance from Barnard, or by solicitation or argument or persuasion of any kind sought

**3. DEEDS: validity: undue influence: incompetency of evidence: statements of grantor.**

to influence his action in that respect. In saying this, we do not overlook the testimony of a witness who undertakes to repeat an alleged statement by Barnard that "they tortured him so; they wanted him to make a will and sign everything over to them." This evidence was clearly incompetent, and entitled to no weight as proof of the fact of undue influence. The one competent witness who mentions any conversation with the grantor on the subject before the notary was called to draw the deed, is a son of the appellee's, who says that, on one occasion, he suggested to his uncle Barnard that he ought to make a deed of the 56 acres to the appellee, and that Barnard assented, saying, "I

will just make him a deed for all of it, and that will clean it up." Appellee was not present when the deed was drawn and signed. To the notary who prepared the deed, Barnard said—not in the appellee's presence—that he wished to "make a deed giving Francis the title to the land when he was gone." When the paper had been written out, it was read over to him, and he signed it. So far as the evidence shows, this business was transacted without interruption or interference on part of the appellee or any of his family, and without any assistance on their part, except by one of the sons, who gave the notary the description of the land, which was assented to by Barnard. Not only is there an absence of any evidence of undue influence in the procurement of the deed, but such evidence as there is tends to negative its existence.

Nor is there shown to have been any such peculiar relation of trust or confidence between Barnard and the appellee as will raise any presumption of fraud or undue influ-

4. DEEDS: valid-
ity: presump-
tions: confiden-
tial relations.

ence, or cast upon the appellee the burden of an affirmative showing of good faith on his part. The mere fact that these men were brothers is insufficient for that purpose. *Reeves v. Howard*, 118 Iowa 121. It may be true that Barnard's crippled condition led him to depend to a considerable degree upon the help of his brother and nephews, in doing those things for which he was thus physically incapacitated; but there is nothing whatever to indicate that, with respect to matters requiring the exercise of his will or opinion or judgment, he was in any manner controlled by them, or that he was accustomed to rely upon their advice or suggestion rather than his own, in the conduct of his own business. The trial court's conclusion that the charge of undue influence was not proved is well sustained by the record.

III. Nor do we find any substantial evidence that Barnard Bradley was of unsound mind. There is nothing

to show that he was not naturally a person of fair average mentality. He was but 62 years of age, at the time of his death—an age which suggests no probability of advanced senile debility. His death is said to have been the result of a diseased condition of the bowels, an ailment not shown to be accompanied by marked deterioration of mental capacity. The deed was made some three or four months before his death. The two physicians who visited him in his last sickness, and the only expert witnesses testifying upon the trial below, unite in saying they discovered no signs of mental unsoundness. The priest, who visited him frequently, and who administered the sacrament to him but a few days before the making of the deed, expresses the opinion that he was of sound mind. The notary who drew the deed says that, in this transaction, Barnard appeared to act understandingly. The only evidence in support of the claim that Barnard was of unsound mind is given by two or three relatives directly or indirectly interested in the success of the appellants in this litigation, and their expression of opinion of his mental unsoundness is so far without substantial support, either in their own testimony or in that of other witnesses, and is sought to be supported by incidents of such trivial and inconsequent character that, even if wholly disinterested, their evidence would be insufficient, as a matter of law, to overcome the usual presumption of sanity.

5. DEEDS: validity: unsound mind: sufficiency of evidence.

IV. Is the deed without legal effectiveness because of the provision therein which reads, "The title to this land is not to pass while I live?"

This, in our judgment, is the one fairly debatable question presented by the record before us. If the attention of the court is to be centered upon the one clause here quoted from the deed, and it is allowed to dominate and control the effect of the in-

6. DEED: requisites and validity: deposit for delivery after death: title not to pass during life.

strument, to the exclusion of its other terms, then the appellant's position is impregnable, and the decree below must be reversed. But a deed, like other writings, must be read and considered as a whole, and if it be possible, within the accepted rules and principles of law, to give force and effect to all the provisions, this must be done. Now, the instrument in this case starts out with the clear and unequivocal declaration that Barnard Bradley "does hereby sell and convey to Francis Bradley" the specifically described tract. This is a complete and perfect granting clause, which, under strict application of an ancient rule of construction, would prevail over any subsequent repugnant provision of the same instrument. But, for the purposes of this case, it may be conceded that the rule here referred to has, in recent years, undergone some modification, and that, in so far as the lawful intent of the grantor is ascertainable from the writing, it will be given effect. In so doing, the instrument will be read in the light of the proved or admitted circumstances under which it was made. *Tuttle v. Raish,* 116 Iowa 331, 336. It appears without dispute that Barnard had, for many years, lived in the home of Francis, and, while he had numerous other relatives, it is a reasonable conclusion that he felt under peculiar obligation to this brother, of whose family he had so long been a member. There is no evidence that he contributed in any material degree to the support of the family, or paid for his board or lodging or for the care bestowed upon him, except as such compensation may be found in the conveyance of this land. The condition of his health at the date of the deed was such as to suggest to him that his lease of life was nearing its close; and if he felt that the transfer of the land, subject to his own possession and enjoyment for the brief remnant of his life, was a fit recognition of the help he had received at the hands of Francis, it was wholly within his right to carry that purpose into effect by a suitable deed.

Is such purpose manifest in the deed now before us? This inquiry, we are persuaded, must be answered in the affirmative. It is doubtless true that a deed which is so limited or so conditioned as not to pass to grantee any interest in the described property during the lifetime of the grantor is ineffectual as a conveyance, though, under some circumstances, it may operate as a valid will. *Burlington University v. Barrett,* 22 Iowa 60; *Leaver v. Gauss,* 62 Iowa 314. In the cases here cited, and others which follow the rule of these precedents, it will be seen that, by the express terms of the deeds there being considered, or by necessary implication from such terms, the grantees were to have "no interest" in the property until the grantor's death. There is no such provision in the deed now under consideration. It does provide that the "title shall not pass" until the death of the grantor, but this is by no means the equivalent of a declaration that the grantee shall have "no interest" in the property during the lifetime of the grantor. That a deed made and by the grantor placed in the custody of a third person, to be delivered to the grantee only upon the death of the grantor, is valid, and, when delivered to the grantee by the depositary after the grantor's death, will take effect by relation as of the date of such deposit, is too well established to admit of discussion. *White v. Watts,* 118 Iowa 549, 553; *Trask v. Trask,* 90 Iowa 318, 321; *Matheson v. Matheson,* 139 Iowa 511; *Foreman v. Archer,* 130 Iowa 49; *Shaull v. Shaull,* 182 Iowa 770. See, also, the many other decisions to the same effect, which are approved in disposing of the cases here cited. In this class of cases, title, strictly speaking, does not pass to the grantee in the lifetime of the grantor. The title remains in the grantor until his death, when, by relation, it becomes perfected in the grantee as of a prior date. In other words, so long as the grantor lives, there is no completed or per-

7. DEEDS: requisites and validity: deed effective after death of grantor: acceptance.

fected delivery of the deed or passing of the title to the grantee, and the clause in the deed from Barnard to Francis providing that title to the land "shall not pass" in Barnard's lifetime is no more than an expressed recognition of what would have been implied had it been wholly omitted from the writing, and the document had been deposited with Bogart, to be delivered after Barnard's death. That Barnard intended to transfer the land to Francis is not open to doubt. He undertook, as we have already noted, to "sell and convey," and this he did with covenants of warranty. It was a deed of conveyance in all essential features, subject only to a postponement of its completed delivery to the grantee until the death of the grantor. By this device the grantor retained the legal title and the beneficial use of the land during his life, and the grantee acquired an interest or estate therein which would ripen into a legal title with the termination of the grantor's life. It is not very material whether the deed was made pursuant to a prior contract, express or implied, between these brothers; for it was entirely competent for Barnard to make such conveyance as a gift, if so inclined, and proof of a valuable consideration is not essential to its validity. Francis not being a competent witness to the transactions had between them, and no other witness attempting to speak of his personal knowledge upon the subject, the deed itself supplies all the information available on this subject. The writing signed by Barnard not only imports a consideration for its execution, but states in terms that it is in consideration of "two dollars and care and support while I live," and that its delivery to Francis was "to be in lieu of any charge for my care and support." This declaration is broad enough to cover all charges against him for the care and support already given, as well as for that which he would require during the remainder of his life; and such care and support having in fact been furnished to him, the appellee's acceptance of the benefits of such conveyance

after the death of Barnard is the legal equivalent of an express acceptance at the date of the deed. *Van Valkenburg v. Allen,* 111 Minn. 333 (126 N. W. 1092); *Creswell v. Creswell,* 138 Iowa 607. For the support of this conclusion, no mere presumption of acceptance from the beneficial character of the grant is needed. The grantee did and does accept the benefits of the conveyance, and is in court asserting title thereunder; and this is all that could be required, even if the deed should be treated as one of mere gift, which, manifestly, it is not.

Whether the word "escrow," as used in the deed, is employed in its strictly technical sense, is discussed by counsel on either side; but we do not regard it as a matter of material import. It shows without dispute

8. DEEDS: requisites and validity: deposit to take effect after death: vesting of a present interest.

that, when the deed was made, Barnard deposited it with Bogart, to be held until Barnard's death; and this, together with the language of the deed itself, shows the purpose and intent of such deposit to clothe Francis with the perfected title upon the death of his brother. The act and the intent being lawful, the name or designation to be given the transaction is not of controlling importance.

The case, as presented by the conceded facts, falls well within the rules approved by this court in *Shaull v. Shaull,* 182 Iowa 770, and others of our cases cited therein. The rule there specially emphasized makes it the duty of the court to carry out the lawful intention of the maker of the deed, and, if possible, to give effect to all parts of the instrument. In the *Shaull* case, the deed provided that it was to "take effect immediately upon the death of both grantors;" and in *Saunders v. Saunders,* 115 Iowa 275, the deed expressly stated the intention that it should "not take effect until after the death of this grantor." The purpose of the grantors in the cited cases to withhold a completed delivery dur-

ing their lifetime is no more clear than it is in the deed from Barnard Bradley to the appellee herein, and in each instrument, it was held sufficient to vest the grantee with a present interest in the land. The rule so applied commends itself to our adherence, not only because of the numerous precedents in which it has been recognized, but also because it is so clearly just. Following it, we hold that the deed here in controversy constitutes a conveyance, valid in law and in equity, to the grantee therein named, and that the appellants, as heirs of the grantor, acquired no right, title, or interest in the land so conveyed.

IV.   Counsel have given considerable attention to the question whether, in case the deed should be held to be ineffective as a conveyance, it could still be made effective as a valid testamentary disposition of the property, or as a contract which the appellee might enforce in this or some other appropriate action; also whether the appellants, by their laches in bringing suit, and in failing to procure administration upon the estate of Barnard Bradley, are estopped to maintain this action to set aside the deed to appellee; but our conclusion upon the issues hereinbefore discussed makes it unnecessary for us to consider or decide the questions so raised.

For the reasons stated, the appeal cannot be sustained, and the decree of the district court must be, and it is,—*Affirmed*.

LADD, C. J.. EVANS and GAYNOR, JJ., concur.

SALINGER, J., concurs in the conclusion, but not in all of the argument.