MABEL GOODMAN et al., Appellants, v. GEORGE ANDREWS et al.,
Appellees.

DEEDS:  Delivery—Depositing With Third Party—Effect.  The depos-
iting of a duly executed deed with a third party, with direction,
without reservation, to record the same in case of the death of the
grantor, constitutes a delivery to the grantee.  (See Book of Anno.,
Vol. 1, Sec. 10084, Anno. 19 *et seq.*)

DEEDS:  Construction—Deed (?) or Will (?)   A *warranty deed subject
to a life estate in grantor's surviving spouse will not be deemed
testamentary because of a clause wherein grantor ineffectually at-
tempted to restrain the alienation of the land by the grantee.

DEEDS:  Validity—Mental Incapacity.  Record reviewed, and held in-
sufficient to establish such mental incapacity in a grantor as to
invalidate a deed executed by him.

Headnote 1:  18 C. J. p. 208.  Headnote 2:  18 C. J. p. 362.  Head-·
note 3:  18 C. J. p. 443.

Headnote 1:  54 L. R. A. 865; 9 L. R. A. (N. S.) 224; 38 L. R. A.
(N. S.) 941; 8 R. C. L. 991.  Headnote 2:  8 R. C. L. 931–935.

*Appeal from Harrison District Court.*—W. C. RATCLIFFE, Judge.

MAY 3, 1927.

Action in equity to set aside a deed.  The facts appear in
the opinion.  The petition was dismissed, and the plaintiffs ap-
peal.—*Affirmed.*

*William P. Welch,* for appellants.·

L. W. Fallon, for P. J. Morrow, Guardian, Administrator,
appellee.

*William P. Welch,* for Lillian Collins, W. B. Oliver, Charles
Oliver, and H. L. Goodman, appellees.

*Robertson & Havens,* for other appellees.

VERMILION, J.—W. H. Collins died intestate March 1, 1915.
He was survived by his wife, Susan Collins, who was named as
a defendant herein, but who died before the trial below; by the

1. DEEDS: delivery: four children Mabel Goodman, Con Collins,
depositing with Coral Oliver, and Edith Oliver, who are the
third party: plaintiffs and appellants herein; and by another
daughter, Minnie Clark, who is a defendant. He was also sur-
vived by two grandchildren, George Andrews and Virgil Peasely,
who were children of his daughter Minnie by a former marriage,
and who had been adopted by him and his wife. They were
named as defendants, and George Andrews, a minor, appeared
by guardian *ad litem*.

On February 2, 1915, W. H. Collins and his wife joined in
the execution of a warranty deed purporting to convey to his
grandchild and adopted son, the appellee George Andrews, 77
acres of an 80-acre tract owned by him, for a stated consideration
of one dollar and other valuable consideration. The deed con-
tained the following provision:

"And to be subject to a life lease to Susan Collins said
Susan Collins to have the use and control of said land as long as
she lives and then the said George Andrews to have the use and
control of said land for 20 years after the death of Susan Collins
before he acquires title. Meaning and intending that he cannot
dispose of said land until 20 years after the death of Susan Col-
lins. At the end of the 20 years period after Susan Collins'
death the said George Andrews is to have title to said land to do
as he pleases with it."

At the same time, the decedent executed a warranty deed
for the remaining 3 acres of the 80, which was all the land he
owned, and a bill of sale of all his personal property, to his wife.
These three instruments were left by the decedent with one
McEvoy, who was at that time cashier of the Mondamin Savings
Bank, with verbal direction to take the papers and keep them,
and if anything happened to him (the grantor), to have them
recorded. On March 5, 1915, after the death of W. H. Collins,
the instruments were recorded by McEvoy, and were thereafter
kept in the bank until the time of the trial below.

The appellee George Andrews was, at the time of the execu-
tion of the deed to him, about nine years of age, and was living
with his grandparents. The widow, Susan Collins, remained in
possession of all the property until her death, shortly before the
trial below. There is no dispute about the foregoing facts.

This action was commenced in 1924 by the four children of

W. H. Collins other than Minnie Clark, to set aside the deed to George Andrews. The grounds of attack upon the deed are: (1) That it was never delivered; (2) that it was testamentary in character, and was not executed with the formality required of a valid will; and (3) that the grantor was, at the date of its execution, of unsound mind.

I. The intent of the grantor is of controlling importance in the question of delivery of a deed; and it is well settled that, where a deed duly executed by the grantor is deposited by him in the hands of a third person, with direction to deliver it to the grantee, or to place it of record on the death of the grantor, and there is no reservation of a right to recall it, there is a sufficient delivery. *Hinson v. Bailey,* 73 Iowa 544; *Trask v. Trask,* 90 Iowa 318; *White v. Watts,* 118 Iowa 549; *Dettmer v. Behrens,* 106 Iowa 585; *Everts v. Everts,* 120 Iowa 40; *Albrecht v. Albrecht,* 121 Iowa 521; *Foreman v. Archer,* 130 Iowa 49; *Criswell v. Criswell,* 138 Iowa 607; *In re Estate of Bell,* 150 Iowa 725; *Kyle v. Kyle,* 175 Iowa 734; *Bradley v. Bradley,* 185 Iowa 1272; *Lathrop v. Knoop,* 202 Iowa 621.

Where the conveyance is beneficial to the grantee who is a minor, and it is recorded by the direction of the grantor, there is a sufficient delivery. *Robinson v. Gould,* 26 Iowa 89; *Tallman v. Cooke,* 39 Iowa 402; *Davis v. Davis,* 92 Iowa 147; *Foreman v. Archer,* supra.

The grantee was, at the time of the execution of the deed, but nine years of age; it was delivered to McEvoy, with directions to record it if anything happened to the grantor. The evidence is quite conclusive that the grantor was then sick, and expecting to die, and was making a disposition of his property in contemplation of death. It is not seriously contended that decedent's direction to McEvoy to record the deed "if anything happened to him" did not refer to his expected death. There was no reservation of a right to recall the deed, and, on his death in less than thirty days thereafter, McEvoy recorded the instrument. We are clearly of the opinion that there was, under all the authorities, a sufficient delivery of the deed.

II. The contention that the deed was testamentary in character is grounded upon the proposition that it did not convey a present title.

It is to be noted that the deed reserves a life estate in de-

cedent's wife. In *McKemey v. Ketchum*, 188 Iowa 1081, we said:

"And the fact that a life estate is reserved tends strongly to prove there was an intention to pass present title."

Moreover, the effect of placing the deed in the hands of a third person, to be recorded only after the death of the grantor, was to reserve a life estate in the grantor. In such case, it is held that the title vests in the grantee, but his right to possession and enjoyment is postponed until the grantor's death. *Foreman v. Archer,* supra; *Kyle v. Kyle,* supra; *Bradley v. Bradley,* supra.

2. DEEDS: construction: deed (?) or will(?)

Stress is laid by appellants upon the provisions of the deed that, after the termination of the life estate to the wife, the grantee is "to have the use and control of said land for 20 years before he acquires title," and that, at the end of the 20-year period after the death of the wife, the grantee "is to have title to said land to do as he pleases with it," as showing that it was the intention of the grantor that no present title passed to the appellee Andrews.

In *Shaull v. Shaull*, 182 Iowa 770, the deed, by its express terms, was to take effect upon the death of the grantors. After an extensive review of the authorities, we held that title passed on delivery; that only the right to possession and enjoyment was postponed until the grantor's death; and that the instrument was not testamentary in character. We applied the same rule in *Leonard v. Wren*, 184 Iowa 1339, where the deed provided that it was not to take effect during the lifetime of the grantors, but after their death was to vest complete title; and held that it was not testamentary. These cases are clearly controlling here. See, also, *Manchester v. Loomis*, 191 Iowa 554.

Furthermore, the grantor in the deed itself interpreted and construed its provisions as "meaning and intending that he cannot dispose of said land until 20 years after the death of Susan Collins." So construed, it was clearly not a limitation upon the estate in fee granted in the deed, but was an attempt to impose a restraint upon its alienation, and as such it was void. *McCleary v. Ellis*, 54 Iowa 311; *Teany v. Mains*, 113 Iowa 53; *Ogle v. Burmister*, 146 Iowa 33; *Hess v. Kernen Bros.*, 169 Iowa 646; *Glenn v. Gross*, 185 Iowa 546; *Davidson v. Auwerda*, 192 Iowa 1338.

It is said that the simultaneous execution of the deed and

bill of sale to the wife, under the circumstances shown, evinced an intention on the part of the grantor to make a disposition of his property to take effect only after his death, and that it was, therefore, testamentary. It appears, without dispute, that, at the time of the execution of these instruments, decedent had under consideration the advisability of making a will, and chose the method adopted of disposing of his property, instead of doing so by will. The deed and bill of sale to the wife are not in issue here, and, so far as the record shows, their validity has never been questioned. The deed was not void as being testamentary in character and lacking the formalities of execution essential to a will.

III. The question of the mental capacity of the grantor is one of fact. The case is triable here *de novo*, and we must determine it on the record presented. The evidence is in some conflict. No benefit would result from a detailed and extended discussion of the testimony of the witnesses.

The decedent was but 56 years of age at the time of his death. He appears to have been, prior to his last illness, a strong man, both physically and mentally. He is described as stubborn. He had been afflicted for some months

3. DEEDS: validity: mental incapacity.

with rheumatism and some form of heart trouble. He thought he was not going to recover, and grieved over this. No loss of memory, no incoherence of thought or expression, was shown. No nonexpert witness described any action, conduct, or conversation indicating any loss or weakening of his mental faculties. A physician who attended him during his last illness testified that he was of unsound mind. He named no particular mental disorder as being present, or that would or did result from or accompany the physical ailments from which decedent suffered. He said that the decedent had delusions of persecution. This opinion appears to have been based wholly upon the decedent's expressed dislike of his sons-in-law and his statements that they were trying to get his property. The doctor testified to no other manifestation of deviation from normal mentality. The antipathy of decedent to his sons-in-law seems not to have been confined to his latter days, or to have been at all incident to his illness, but to have antedated their marriage to his daughters. Whether it was justified or not, we are not impressed with the doctor's designation of grantor's

attitude in this respect as the possession of insane delusions of persecution.

Other witnesses, including a physician who treated him within a month of the execution of the deeds and bill of sale, and the notary who, at his direction, prepared them, and discussed them with him, testified that they saw nothing to indicate any mental unsoundness.

George Andrews, the grantee in the deed, and his sister had been adopted by the decedent and his wife in 1912, when their mother, after divorcing her first husband, their father, had remarried. From that time, they had been reared by the grandparents. The daughters of the family were then married. The property conveyed by the deeds and bill of sale was all the decedent possessed. It was his, to do with as he saw fit, subject to the rights of his wife. She was given all the personal property and a small portion of the real estate absolutely, and the use of the remainder of the land during her life. The mere fact that he favored the infant grandson and adopted child to the exclusion of his own adult children, or even the other adopted child, is not of itself evidence that he was mentally incapable of making such disposition of his property as he desired.

A circumstance entitled to some consideration is the fact that no attack was made upon the deed for nearly ten years after it was recorded. The testimony tending to show unsoundness of mind at so remote a date is not persuasive. We agree with the trial court that no mental incapacity to make the deed in question was shown.

IV. Complaint is made by appellants that the court did not charge George Andrews with an amount paid by Susan Collins, the life tenant, in discharge of a mortgage on the land. The administrator of her estate was made a party after her death. No demand for such relief was made by him below, and he has not appealed.

The judgment is—*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and KINDIG, JJ., concur.